No. 26-1232

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,
*Plaintiff and Appellant*,

v.

SHIRLEY WEBER, ET AL.,
*Defendants and Appellees*,

NAACP, ET AL.,
*Defendants-Intervenors and Appellees*.

―――――――――――

**On Appeal from the United States District Court
for the Central District of California
No. 2:25-cv-09149-DOC-ADS**

―――――――――――

## APPELLEES' OPPOSITION TO EMERGENCY MOTION
## TO EXPEDITE APPEAL

―――――――――――

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
  *Supervising Deputy Attorneys
  General*

ANDRA LIM
IAN FEIN
  *Deputy Solicitors General*
ROBERT WILLIAM SETRAKIAN
ANNE P. BELLOWS
LISA C. EHRLICH
MICHAEL S. COHEN
KEVIN L. QUADE
WILLIAM BELLAMY
MALCOLM A. BRUDIGAM
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
1300 I Street, Suite 125
Sacramento, CA 95814
(916) 210-6004
Andra.Lim@doj.ca.gov
  *Attorneys for Defendants and Appellees*

March 10, 2026

# TABLE OF CONTENTS

**Page**

Introduction ................................................................. 1

Background ................................................................. 3

Argument.................................................................... 11

    I.    No Good Cause Exists to Expedite This Appeal ................... 11

    II.    DOJ's Proposed Briefing Schedule Is Unfair and Unworkable ........................................................... 18

    III.    If the Court Adopts a Different Briefing Schedule, It Should Adopt California's Proposed Schedule...................... 21

Conclusion ................................................................. 22

# TABLE OF AUTHORITIES

**Page**

CASES

*Disability Rights La. v. Landry*
   2024 WL 3566698 (M.D. La. July 29, 2024) ............................................. 17

*Hursh v. DST Sys., Inc.*
   2023 WL 3331799 (W.D. Mo. May 8, 2023) ............................................. 12

*In re U.S. Lines, Inc.*
   318 F.3d 432 (2d Cir. 2003) ....................................................... 12

*Libertarian Party of Ohio v. Husted*
   751 F.3d 403 (6th Cir. 2014) ...................................................... 13

*Merrill v. Milligan*
   142 S. Ct. 879 (2022) ............................................................. 17

*Mi Familia Vota v. Hobbs*
   977 F.3d 948 (9th Cir. 2020) ...................................................... 13

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) ..................................................... 20

*Nader v. Land*
   115 Fed. App'x 804 (6th Cir. 2004) ............................................... 12

*Ne. Ohio Coalition for Homeless v. Husted*
   696 F.3d 580 (6th Cir. 2012) ...................................................... 13

*Preston Collection Inc. v. Youtsey*
   2020 WL 5362663 (D. Ariz. Aug. 24, 2020) ........................................ 20

*Pub. Int. Legal Found. v. Benson*
   136 F.4th 613 (6th Cir. 2025) ..................................................... 16

*Texaco P.R., Inc. v. Dep't of Consumer Affs.*
   60 F.3d 867 (1st Cir. 1995) ........................................................ 12

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*TGP Commc'ns, LLC v. Sellers*
  2022 WL 17484331 (9th Cir. Dec. 5, 2022)..............................13

*United States v. Benson*
  2026 WL 362789 (S.D. Mich. Feb. 10, 2026).....................................11, 18

*United States v. Kentucky*
  No. 3:17-cv-00094 (E.D. Ky. June 21, 2018), Dkt. 35 ............................16

*United States v. Oregon*
  2026 WL 318402 (D. Or. Feb. 5, 2026) ........................................10, 18, 20

*United States v. Weber*
  2026 WL 118807 (C.D. Cal. Jan. 15, 2026).......................................*passim*

*Wells Fargo Bank, N.A. v. Atmore-Brewton-Marshall Props., LLC*
  2014 WL 199202 (S.D. Ala. Jan. 17, 2024) ..............................................12

**STATUTES**

28 U.S.C. § 1657..............................................................................11

28 U.S.C. § 1657(a) ......................................................................6, 11

52 U.S.C. § 20507(a)(4).................................................................13

52 U.S.C. § 20507(a)(4)(A)-(B) ..................................................5, 14

52 U.S.C. § 20507(c)(2)(A) ...........................................................14

52 U.S.C. § 20507(i)(1) ...................................................................5

52 U.S.C. § 20703 ............................................................................5

52 U.S.C. § 21083(a)(4)(A) ........................................................5, 14

Cal. Elec. Code § 2194(b)(1) ...........................................................3

# TABLE OF AUTHORITIES
## (continued)

Page

Cal. Elec. Code § 2201(a)(8) ........................................................... 17

CONSTITUTIONAL PROVISIONS

U.S. CONST. art. I, § 4, cl. 1 ........................................................... 14

REGULATIONS

Cal. Code Regs. tit. 2, § 19001(h) .................................................... 15

COURT RULES

Fed. R. App. P. 4(a)(1)(B) ............................................................... 9

Fed. R. App. P. 29(a)(6) .................................................................. 21

Fed. R. App. P. 31(a)(1) .............................................................. 18, 22

Circuit Rule 27-3 ............................................................................ 10

Circuit Rule 27-12 .......................................................................... 11

Circuit Rule 31-2.2 ..................................................................... 18, 19

Circuit Rule 34-3 ............................................................................ 11

OTHER AUTHORITIES

Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (updated Mar. 4, 2026), https://tinyurl.com/26a3hpu6 ........................................................ 4

## INTRODUCTION

After waiting nearly six weeks to file a notice of appeal, the U.S. Department of Justice (DOJ) has filed an emergency motion seeking an extraordinarily expedited briefing schedule in this appeal regarding its efforts to obtain California's unredacted computerized statewide voter registration list containing the sensitive information of more than 23 million voters. But the asserted "emergency" is of DOJ's own making. DOJ did not seek to expedite this case in the district court and instead sought to slow down the proceedings at certain points. And once the district court ruled, DOJ waited nearly six weeks to file a notice of appeal. Despite its dilatory conduct, DOJ now proposes an expedited briefing schedule under which it would have nearly nine weeks from the district court's order to prepare its own principal brief, while the Secretary of State and the State of California (together, California) would have merely one week to file California's principal brief. And DOJ's motion does not even mention a briefing deadline for Defendants-Intervenors' answering briefs.[1]

DOJ contends that this appeal must be resolved urgently so that it can obtain an unredacted copy of California's voter registration list months before the November 3, 2026 general election. But unlike other cases where courts have

---

[1] Defendants-Intervenors are the NAACP; NAACP California-Hawaii State Conference; Services, Immigrant Rights and Education Network; and the League of Women Voters of California.

expedited an appeal to resolve which elections procedures will apply in an upcoming election, this case asks the Court only to resolve DOJ's demand for certain information. That is entirely unrelated to the administration of the general election, and there is no need for an "emergency" resolution of the issue. That is especially so because DOJ has never plausibly explained why an unredacted copy of California's voter registration list is necessary for its asserted purpose of ensuring compliance with federal laws pertaining to voter registration or why it believes California may have violated those laws. And DOJ's own conduct suggests that it does not have particular concerns about *California*'s administration of its voter registration list: DOJ has sued 29 States and the District of Columbia to obtain copies of their voter registration lists with voters' sensitive information. DOJ's motion to expedite is not about the "sanctity" of the upcoming election but about the production of California voters' sensitive information so that DOJ can conduct a hasty fishing expedition over the coming months.

Making matters worse, DOJ has also filed a motion to consolidate this appeal with an appeal arising out of an action it brought against the State of Oregon and its Secretary of State (together, Oregon). But consolidation of these two matters has the potential to make appellate litigation more complex and thus more difficult to resolve on the extremely expedited timeline DOJ proposes.

The Court should deny DOJ's motion to expedite appeal and allow this case to proceed under the default briefing schedule the Court has already ordered. But if the Court believes some constraints on the briefing schedule are necessary, it should reject DOJ's unreasonable and unfair proposed schedule and adopt the schedule California proposes below. California has a deep commitment to a free and democratic system of fair elections, but expediting this appeal is not at all necessary to ensure the "sanctity" of the general election.

## BACKGROUND

In July 2025, DOJ sent a letter to the Secretary demanding an electronic, unredacted, and point-in-time copy of California's statewide voter registration list, which currently has the information of more than 23 million registered voters. D. Ct. Dkt. 37-2 at 6-8. DOJ also asked the Secretary questions about voter registration list maintenance, as well as California's submissions in response to the U.S. Elections Assistance Commission's 2024 Election Administration and Voting Survey (EAVS). *Id.* The Secretary responded by offering to make a copy of California's voter registration list available for inspection at the Secretary's office in Sacramento. *Id.* at 16. The Secretary explained that, in accordance with California and federal law, certain sensitive information would be redacted, including voters' driver's license numbers and social security numbers. *Id.*; *see, e.g.*, Cal. Elec. Code § 2194(b)(1) (providing that certain voter information is

3

"confidential and shall not be disclosed to any person"). The Secretary provided

thorough responses to all of DOJ's questions. D. Ct. Dkt. 37-2 at 15-18, 29-30, 50-

57; *see United States v. Weber*, 2026 WL 118807, at *4 (C.D. Cal. Jan. 15, 2026)

(noting Secretary's "comprehensive responses" to DOJ).

    In September 2025, DOJ sued the Secretary and the State of California to

obtain an unredacted copy of California's entire computerized voter registration

list. D. Ct. Dkt. 1 at 16, ¶ 5. DOJ is demanding California produce the list "with

all fields" of information associated with each individual voter's registration record

for all of the State's more than 23 million voters. *Id.* That includes "highly

sensitive information," such as social security numbers and driver's license

numbers. *Weber*, 2026 WL 118807, at *1.

    California is not the only State from which DOJ is seeking sensitive voter

information. To date, at least 48 States and the District of Columbia have received

DOJ "demands for complete copies of statewide voter registration files." *Weber*,

2026 WL 118807, at *4.[2] And DOJ has sued most States in the country—29 States

and the District of Columbia to date—"in an effort to receive the full voter

registration files of millions of voters across the entire country." *Weber*, 2026 WL

118807, at *4.[3]

---

[2] *See* Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (updated Mar. 4, 2026), https://tinyurl.com/26a3hpu6.

[3] *See* Brennan Center for Justice, *supra*.

4

DOJ's complaint against California first claims that DOJ is entitled to an unredacted copy of the statewide voter registration list under Title III of the Civil Rights Act, which contains a provision allowing for "inspection, reproduction, and copying" of certain records "by the Attorney General or his representative" under certain circumstances.  52 U.S.C. § 20703; D. Ct. Dkt. 1 at 13-14, ¶¶ 46-49.  DOJ also claims that it is entitled to the unredacted voter registration list under the National Voter Registration Act (NVRA), which requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the "death of the registrant" or "a change in the residence of the registrant."  52 U.S.C. § 20507(a)(4)(A)-(B); D. Ct. Dkt. 1 at 14-15, ¶¶ 50-56.  The NVRA allows "public inspection and, where available, photocopying" of "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  DOJ finally claims it is entitled to California's voter registration list to enforce the Help America Vote Act (HAVA), which requires States to have a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters."  52 U.S.C. § 21083(a)(4)(A); D. Ct. Dkt. 1 at 15-16, ¶¶ 57-63.  DOJ alleges that federal law

"preempt[s]" California privacy laws that protect voters' sensitive information.  D. Ct. Dkt. 1 at 13, ¶ 42.

Notably, DOJ's complaint does not allege that California is violating the NVRA or HAVA requirements to have a reasonable voter registration list maintenance program.  Instead, DOJ alleges that an unredacted copy of the voter registration list "is necessary for the Attorney General to determine if California" is complying with the NVRA, and necessary for the Attorney General to "evaluat[e] California's compliance with HAVA."  D. Ct. Dkt. 1 at 14 ¶ 53, 15 ¶ 60.

After filing its complaint, DOJ did not seek to expedite this action in the district court.  *See* 28 U.S.C. § 1657(a) (allowing for expedition where "good cause therefor is shown").  In fact, DOJ attempted to slow down the proceedings at certain points.  On October 1, 2025, DOJ filed a motion to stay the case, citing the federal government's shutdown.  D. Ct. Dkt. 6 at 2-3.  DOJ only withdrew the motion a month and a half later, despite working on the case during that period.  D. Ct. Dkt. 60 at 2-3.  DOJ also asked California if it would be amenable to extending a critical hearing date by one month, and after California declined, DOJ still asked the court to continue the hearing by a few weeks and to extend a related briefing deadline.  *Id.* at 3-4; D. Ct. Dkt. 57-3 at 1-2.

On January 15, 2026, the district court granted motions to dismiss filed by California and Defendants-Intervenors.  *Weber*, 2026 WL 118807, at *1.  The court deemed "persuasive" California's argument that the court lacked jurisdiction over the Title III claim, but proceeded with a "merits analysis."  *Id.* at *7-8.  On the merits, the court explained that Title III requires DOJ "to offer a written statement of both the purpose and basis for its demands to California."  *Id.* at *8 (emphasis omitted).  The court determined that DOJ's stated purpose—assessing compliance with the NVRA—is "outside the scope of what Congress intended Title III to be used for."  *Id.* at *9.  DOJ also had not "established the basis for its request," because DOJ failed to explain "why it believed the NVRA was violated in its letter to the Secretary" and "why unredacted voter files for millions of Californians, an unprecedented request, was necessary for the DOJ's investigation."  *Id.*  The court expressed concern about DOJ "embark[ing] on a fishing expedition of voter records," without "identifying a single issue with the state's policies beforehand."  *Id.*

The court also emphasized that even though DOJ's claimed purpose in seeking California's voter registration list was "'voter roll maintenance enforcement and compliance,'" DOJ's own conduct and representations demonstrated another purpose.  *Weber*, 2026 WL 118807, at *10.  The court found that DOJ's "nationwide efforts point at" an endeavor to "collect[] sensitive,

personally identifying information of nearly every voter in America on an unprecedented scale" so that the federal government can "utilize[e] that information in a completely different context than what the information was provided for." *Id.* at *4. And DOJ's own representations similarly showed that it is on "a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Id.* at *10. The court also described how DOJ has asked some States "to run their entire voter list" through "the central federal database for citizenship records." *Id.* at *11.

As to DOJ's NVRA claim, the district court held that the law did not require California to provide its unredacted voter registration list. The court explained that there is "longstanding precedent that states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA and that this information is not relevant to the removal of ineligible voters from voting rolls." *Weber*, 2026 WL 118807, at *12. The court also held that DOJ was not entitled to California's voter registration list under HAVA, which "does not contain any disclosure provisions in its statutory text." *Id.* at *15. And even setting that aside, DOJ "simply fails to allege any violations of HAVA." *Id.* The court explained that DOJ pointed to "apparent anomalies with California's" EAVS submissions, but the court determined that DOJ had "been unable to identify any actual issues with California's list maintenance *standards* (which is what HAVA

actually governs)." *Id.* at *16 (emphasis added). The court further held that neither the NVRA nor HAVA preempts California's privacy laws, which protect the confidentiality of certain sensitive voter information and prohibit its disclosure. *Id.* at *13-14, *17.

The district court also addressed California's arguments that DOJ's request for California's unredacted voter registration list violates federal privacy laws: the Privacy Act, E-Government Act, and Driver's Privacy Protection Act. The court held that DOJ's request violates each of these laws. *Weber*, 2026 WL 118807, at *17-19.

After the district court granted the motions to dismiss, DOJ again sought to press pause on the proceedings. DOJ requested a two-week extension to file a motion for reconsideration, D. Ct. Dkt. 129 at ii, which the district court denied the next day, D. Ct. Dkt. 130 at 2. On February 25, 2026—nearly four weeks after the district court denied the extension motion, and six weeks after the court's order granting the motions to dismiss—DOJ filed a notice of appeal. D. Ct. Dkt. 131; *see* Fed. R. App. P. 4(a)(1)(B). This Court then entered an order with the default briefing schedule, under which: (1) DOJ's opening brief would be due on May 20; and (2) California and Defendants-Intervenors' answering briefs would be due on June 22. Dkt. 2.1 at 2-3.

DOJ has now filed an emergency motion in this Court under Circuit Rule 27-3, which both California and Defendants-Intervenors oppose. Mot. at 4. That motion seeks to expedite this appeal and proposes the following briefing schedule: (1) DOJ's opening brief would be due on March 18; (2) California's answering brief would be due on March 25; and (3) DOJ's reply brief would be due on April 1. Mot. at 3. DOJ's motion does not state a proposed briefing deadline for Defendants-Intervenors' answering briefs. *See id.* DOJ also states that it is "willing to waive oral argument," but alternatively requests that any argument take place in April. *Id.* Under DOJ's proposed schedule, it would have nearly nine weeks from the district court's order to prepare its opening brief, after which California would have a single week to file its answering brief.

DOJ has also filed a motion to consolidate this appeal with its appeal in a similar case against Oregon. *See* Dkt. 18.1.[4] Like the district court here, the district court in the Oregon case granted motions to dismiss Title III, NVRA, and HAVA claims brought by DOJ against Oregon for an unredacted copy of its voter registration list. *United States v. Oregon*, 2026 WL 318402, at *5-13 (D. Or. Feb. 5, 2026). The one other district court to have considered the same claims brought

---

[4] California opposes this motion and will separately file an opposition to the motion.

10

against Michigan also granted motions to dismiss. *United States v. Benson*, 2026

WL 362789, at *2-10 (S.D. Mich. Feb. 10, 2026).[5]

## ARGUMENT

### I. NO GOOD CAUSE EXISTS TO EXPEDITE THIS APPEAL

Motions to expedite require a showing of "good cause." Circuit Rule 27-12;

*see also* 28 U.S.C. § 1657(a) (allowing for expedition "if good cause therefor is

shown" based on the "factual context"); Circuit Rule 34-3 (providing that civil

appeals "will receive hearing or submission priority" if the appeal is "entitled to

priority on the basis of good cause under 28 U.S.C. § 1657"). There is good cause

if, "in the absence of expedited treatment, irreparable harm may occur or the

appeal may become moot." Circuit Rule 27-12.

DOJ's own conduct cannot be squared with its contention that there is an

"emergency" that justifies expediting this appeal to avoid irreparable harm. In the

district court, DOJ filed a motion to stay this action, which was pending for a

month and a half. *See* D. Ct. Dkt. 6 at 2; D. Ct. Dkt. 60 at 2. DOJ also asked

California if it would agree to extending the motion to dismiss hearing date by a

month, and then sought an extension of a few weeks as well as an extension of a

---

[5] DOJ has filed motions to expedite in both the Oregon and Michigan
appeals. In the Oregon appeal, both Oregon and Defendants-Intervenors oppose
the motion. In the Michigan appeal, the State of Michigan and its Secretary of
State and Defendants-Intervenors have filed oppositions to the motion.

related briefing schedule.  D. Ct. Dkt. 57-3 at 1-2; D. Ct. Dkt. 60 at 3.  DOJ later

asked the district court to grant it an extra two weeks to file a motion for

reconsideration.  D. Ct. Dkt. 129 at ii.  Ultimately, it took nearly *six weeks* from the

district court's order for DOJ to file a notice of appeal, D. Ct. Dkt. 131—a delay

which DOJ's motion never explains.  DOJ's assertion that the compressed "timing

is not of the United States' making" is false.  Mot. at 3.

DOJ's conduct casts serious doubt on its claim that it must have a decision

well in advance of the November 3, 2026 general election to avoid irreparable

harm.  *See Hursh v. DST Sys., Inc.*, 2023 WL 3331799, at *5 (W.D. Mo. May 8,

2023) (Waiting "weeks to file a notice of appeal from the judgment[] . . . belies

any claim of irreparable harm."); *cf. Wells Fargo Bank, N.A. v. Atmore-Brewton-

Marshall Props., LLC*, 2014 WL 199202, at *3 (S.D. Ala. Jan. 17, 2024)

(plaintiff's delay was "inconsistent with the present hue and cry for an expedited

remedy" (citing cases)).  "[E]quity ministers to the vigilant, not to those who sleep

upon their rights."  *Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 879

(1st Cir. 1995).  DOJ's conduct "in delaying, then demanding an expedited"

briefing schedule "also conflicts with the maxim that 'a litigant who seeks equity

must do equity.'"  *Wells Fargo Bank*, 2014 WL 199202, at *3 (quoting *In re U.S.

Lines, Inc.*, 318 F.3d 432, 437 (2d Cir. 2003)).  Based on DOJ's delay alone, its

motion to expedite should be denied.  *See Nader v. Land*, 115 Fed. App'x 804, 806

(6th Cir. 2004) (denying motion to expedite in elections case "principally because the plaintiffs have not proceeded expeditiously," as plaintiffs "allowed six weeks to pass between the appealed-from order and the motion to expedite").

None of DOJ's arguments in favor of expedition reveal any good cause. DOJ argues that courts "routinely expedite appeals in election cases like this one." Mot. at 10. DOJ cites cases where the appeal's outcome would determine elections procedures. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948 (9th Cir. 2020) (voter registration deadline); *Libertarian Party of Ohio v. Husted*, 751 F.3d 403 (6th Cir. 2014) (candidate's removal from ballot); *Ne. Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) (ballot disqualification rules).[6] But this appeal is only about DOJ's demand for information from California—not any of California's elections procedures. The only relief DOJ seeks is to compel California to produce its unredacted voter registration list. D. Ct. Dkt. 1 at 16-17, ¶¶ 1-6. And DOJ cites no authority under which it could single-handedly change California's elections procedures after obtaining that list, such as by compelling California to "remov[e] nonvoters from its rolls" or by itself conducting "systemic processes" for removing ineligible voters from California's voter registration list. Mot. at 14; *see* 52 U.S.C. § 20507(a)(4) (leaving list maintenance up to *States*); *id.*

---

[6] DOJ also cites *TGP Commc'ns, LLC v. Sellers*, 2022 WL 17484331 (9th Cir. Dec. 5, 2022), which is about press access to election-related events and is therefore inapposite.

§ 21083(a)(4)(A) (same); *see generally* U.S. CONST. art. I, § 4, cl. 1 (providing that the "Manner of holding Elections" "shall be prescribed in each *State* by the Legislature thereof" (emphasis added)).

DOJ's insistence that it must "confirm that California's voter rolls are composed solely of individuals who are eligible to vote in federal elections," after which California "must finish removing nonvoters from its rolls in systemic processes by August 4, 2026," is not a basis for expediting this appeal. Mot. at 14.[7] DOJ's only role is to enforce the NVRA and HAVA, which require California to have a reasonable *program* to remove ineligible voters from the voter registration list. 52 U.S.C. § 20507(a)(4)(A)-(B); *id.* § 21083(a)(4)(A). DOJ has never credibly explained why it believes California may be violating the NVRA and HAVA, such that the "sanctity of elections in California" could be at issue. Mot. at 1. DOJ asserts that California's submissions in response to the EAVS raise questions. Mot. at 14-15. But the Secretary has thoroughly answered those questions, D. Ct. Dkt. 37-2 at 15-18, 29-30, 50-57; *see infra*, pp. 16-17—and beyond that, DOJ's complaint does not even plead violations of the NVRA and HAVA requirements to have a reasonable program, and the district court

---

[7] California's federal primary election will be held on June 2, 2026. Under the NVRA, California cannot begin to systematically remove ineligible voters from its voter registration list until after the June 2 primary and must conclude such efforts before August 4 in light of the November general election. *See* 52 U.S.C. § 20507(c)(2)(A).

ultimately found that none of the purported issues identified by DOJ indicate "any actual issues with California's list maintenance" program, D. Ct. Dkt. 1 at 14-16 ¶¶ 50-63; *Weber*, 2026 WL 118807, at *16. DOJ's cross-country lawsuits further suggest that there is no particular issue with *California*'s program. This appeal should not be expedited simply so that DOJ can conduct a rushed fishing expedition through California voters' sensitive information in the coming weeks. *See Weber*, 2026 WL 118807, at *15 (explaining that DOJ appears to be engaged in "a telltale 'fishing expedition'"); *see also id.* at *9 (expressing concern that "the DOJ could embark on a fishing expedition of voter records in any state looking for concerns, without identifying a single issue with the state's policies beforehand").

Moreover, what DOJ seeks in this action—California's unredacted voter registration list—is not even necessary for DOJ to "confirm that California's voter rolls are composed solely of individuals who are eligible to vote." Mot. at 14. DOJ has never plausibly explained why it needs sensitive voter information to determine whether California has a reasonable program in place for voter list maintenance as the NVRA and HAVA require—especially when the Secretary has offered DOJ access to inspect large amounts of voter information, such as names, dates of birth, and addresses, and when the Secretary has explained in detail California's robust program. *See* D. Ct. Dkt. 37-2 at 16, 51-52; Cal. Code Regs. tit. 2, § 19001(h); *Weber*, 2026 WL 118807, at *9, *16. Indeed, DOJ has long

been able to investigate NVRA and HAVA compliance without requiring production of unredacted voter registration lists. *See, e.g.*, *United States v. Kentucky*, No. 3:17-cv-00094 (E.D. Ky. June 21, 2018), Dkt. 35; *Weber*, 2026 WL 118807, at *9 (explaining the "unprecedented" nature of DOJ's request).

In an attempt to muster a coherent explanation, DOJ contends that the EAVS was missing data from California "regarding duplicate registrants who were removed from the statewide voter registration database." Mot. 14. DOJ apparently believes that this missing data is a red flag—even though nearly three-quarters of States engage in the same practice as California regarding duplicate registrants, D. Ct. Dkt. 37-2 at 53—and that DOJ needs the unredacted voter registration list so that it can "identify duplicate registration records" on a line-by-line basis, D. Ct. Dkt. 63 at 16.[8] Similarly, DOJ asserts that the number of voters California removed because of death "was well below the national average," Mot. 15, and that DOJ needs to "identify . . . registrants who have died" on a line-by-line basis, D. Ct. Dkt. 63 at 16. But there is no requirement that California achieve perfection in removing individual voters; all that is required is that California have a reasonable program for doing so, and that can easily be assessed without examining individual voters' sensitive information. *See, e.g.*, *Pub. Int. Legal*

---

[8] Like most States, when California finds duplicate records, they are "merged" into a single record. D. Ct. Dkt. 37-2 at 53.

*Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025) (explaining that the NVRA requires States to have a "rational and sensible" program but it need not be "perfect, or even optimal"). DOJ also argues that the EAVS was missing certain data from a handful of counties in California. Mot. 14-15. But DOJ has not explained why requiring the entire voter registration list with the sensitive information of more than 23 million registered voters is required for it to address a small subset of missing data.[9] DOJ references in passing "the specter of noncitizen . . . voters remaining on [California's] voter rolls," but cites no reason to believe this is a real-world problem in California. Mot at 15.[10]

DOJ further argues that, without expedited treatment, this appeal "will become moot considering the impending federal election." Mot. 9-10. But if DOJ is entitled to California's unredacted voter registration list, that relief "can take effect for" federal "elections that occur after" 2026. *Merrill v. Milligan*, 142 S. Ct. 879, 882 (2022) (Kavanaugh, J., concurring); *see also Disability Rights La. v. Landry*, 2024 WL 3566698, at *4 (M.D. La. July 29, 2024) (similar).

---

[9] The EAVS guidance provides that if a jurisdiction "does not track data for an item," then the jurisdiction may respond by selecting "Data not available." D. Ct. Dkt. 37-2 at 53, 55.

[10] California law requires canceling a voter's registration if there is proof the person is ineligible to vote, including due to citizenship status. D. Ct. Dkt. 37-2 at 56 (discussing Cal. Elec. Code § 2201(a)(8)).

Finally, DOJ suggests this appeal should be expedited because it presents an "important purely legal question" on which it is likely to succeed. Mot. 10-14. DOJ cites no statute, rule, or case providing that courts should consider those factors as part of deciding whether to expedite an appeal. *See id.* And plenty of cases presenting important legal questions on which a party contends it is likely to succeed are never expedited. In any event, as the district court held, DOJ failed to state a claim under Title III, the NVRA, and HAVA, and so it is not likely to succeed on appeal. *See Weber*, 2026 WL 118807, at *8-17; *supra*, pp. 7-9. The other district courts that have considered DOJ's claims brought under those same statutes against other States have likewise dismissed the claims. *See Oregon*, 2026 WL 318402, at *5-13; *Benson*, 2026 WL 362789, at *2-11. There is no good cause to expedite this appeal, and it should proceed according to the default briefing schedule the Court has already ordered, with parties having the ability to request extensions. *See* Dkt. 2.1 at 2-3; Fed. R. App. P. 31(a)(1); Circuit Rule 31-2.2.

## II.  DOJ's Proposed Briefing Schedule Is Unfair and Unworkable

DOJ's motion to expedite should be denied for the additional reason that its proposed briefing schedule is both unfair and unworkable. DOJ has proposed a briefing schedule that is extremely accelerated:  California would have only *one week* to file its brief responding to DOJ's opening brief. Mot. at 3. That is one-fourth of the minimum time typically allowed. *See* Fed. R. App. P. 31(a)(1) (30-

day briefing deadline); Circuit Rule 31-2.2 (allowing for extensions of time). By contrast, DOJ would have nearly *nine weeks* from the district court's order to draft its principal brief, and later on, another week to file its reply brief. The excessive disparity in the time allotted to prepare briefing places California at a distinct—and completely unnecessary—disadvantage. Had DOJ filed a notice of appeal six weeks ago, then even under DOJ's claim of purported exigency, there would have been significantly more time to brief this appeal. DOJ's proposed schedule penalizes California for DOJ's unexplained weeks-long delay in filing a notice of appeal.

DOJ's proposed schedule is also impractical. Counsel for California have preexisting deadlines and work demands during the interval that DOJ proposes to allocate for preparing and filing the answering brief. And that brief will take significant time to draft and research. The brief will have to address how six different federal statutes, some of which are complex, should be interpreted. *See supra*, pp. 5, 9 (DOJ sued under Title III, the NVRA, and HAVA; and California argued for dismissal under the Privacy Act, E-Government Act, and Driver's Privacy Protection Act). The brief will also need to respond to any new or further developed arguments DOJ makes in its opening brief. DOJ may suggest in reply that California can simply recycle its district court briefing, but that is an ineffective approach to appellate advocacy that California will not adopt. *See*

*Preston Collection Inc. v. Youtsey*, 2020 WL 5362663, at *1 (D. Ariz. Aug. 24, 2020) (appellate briefs should do more than "[c]ut[] and past[e] from trial court briefs"); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[A] competent lawyer won't rely entirely on last year's, or even last month's, research.").  To prepare a brief that is most helpful to the Court on the important issues this case raises, more than a week is required.

California must also coordinate a multi-step review process involving consultation with the Solicitor General of California, with attorneys in the Government Law Section of the California Department of Justice, and with attorneys from the Secretary of State's Office.  Time must be allotted for these attorneys to review and edit the brief before filing, a process which will take more than a single week.

Finally, DOJ has filed a motion to consolidate this appeal with its appeal in a similar case against Oregon.  *See* Dkt. 18.1; *Oregon*, 2026 WL 318402. Consolidating these appeals has the potential to make the litigation more complicated—and DOJ's proposed briefing schedule more unworkable.  If, for instance, California and Oregon are ordered to file a single consolidated answering brief, that will significantly add to the time needed to draft and review the brief.

### III. IF THE COURT ADOPTS A DIFFERENT BRIEFING SCHEDULE, IT SHOULD ADOPT CALIFORNIA'S PROPOSED SCHEDULE

None of DOJ's arguments come close to justifying expedited treatment of this appeal for all the reasons discussed above. Mot. at 14; *see supra*, pp. 11-20. The Court should therefore allow this appeal to proceed along the default briefing schedule it has already ordered, with parties having the ability to request extensions. *See* Dkt. 2.1 at 2-3. But if the Court is inclined to impose constraints on the briefing schedule, California proposes the following schedule:

- March 18: DOJ's opening brief is due. *See* Mot. at 3 (representing that DOJ can file its opening brief by this date).

- May 18: California's answering brief is due; Defendants-Intervenors' answering briefs are due.

- June 8: DOJ's reply brief is due.

- Amicus briefs: Due "7 days after the principal brief of the party [that is] being supported is filed." Fed. R. App. P. 29(a)(6).

- Argument: California requests that the Court hear oral argument at an appropriate time once briefing is complete.

Unlike DOJ's proposed briefing schedule, California's schedule is fair to both sides. *See supra*, pp. 18-19. DOJ would have nearly nine weeks from the district's court order to prepare its opening brief, and California and Defendants-Intervenors

21

would have eight weeks for their answering briefs.  After that, DOJ would have the typical 21 days to file its reply brief.  *See* Fed. R. App. P. 31(a)(1).

## CONCLUSION

DOJ's emergency motion to expedite appeal should be denied.


Dated:  March 10, 2026            Respectfully submitted,

*s/Andra Lim*
_____

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
  *Supervising Deputy Attorneys General*
ANDRA LIM
IAN FEIN
  *Deputy Solicitors General*
ROBERT WILLIAM SETRAKIAN
ANNE P. BELLOWS
LISA C. EHRLICH
MICHAEL S. COHEN
KEVIN L. QUADE
WILLIAM BELLAMY
MALCOLM A. BRUDIGAM
  *Deputy Attorneys General*

*Attorneys for Defendants and Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rules 27-1(1)(d) and 32-3 because it contains 5,106 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.

*s/Andra Lim*
Andra Lim

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, I electronically filed the foregoing motion by using the appellate ACMS system.

I certify that the participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/Andra Lim*
Andra Lim