No. 26-1232

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff and Appellant*,

v.

SHIRLEY WEBER, ET AL.,
    *Defendants and Appellees*,
NAACP, ET AL.,
    *Defendants-Intervenors and Appellees*.

**On Appeal from the United States District Court
for the Central District of California**
No. 2:25-cv-09149-DOC-ADS

**APPELLEES' OPPOSITION TO MOTION TO
CONSOLIDATE APPEALS**

ROB BONTA
 *Attorney General of California*
SAMUEL T. HARBOURT
 *Solicitor General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
 *Supervising Deputy Attorneys General*

ANDRA LIM
IAN FEIN
 *Deputy Solicitors General*
ROBERT WILLIAM SETRAKIAN
ANNE P. BELLOWS
LISA C. EHRLICH
MICHAEL S. COHEN
KEVIN L. QUADE
WILLIAM BELLAMY
MALCOLM A. BRUDIGAM
 *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
1300 I Street, Suite 125
Sacramento, CA 95814
(916) 210-6004
Andra.Lim@doj.ca.gov
 *Attorneys for Defendants and Appellees*

March 10, 2026

The U.S. Department of Justice (DOJ) seeks to consolidate this appeal regarding its efforts to obtain a copy of California's unredacted computerized statewide voter registration list with an appeal regarding its similar efforts in Oregon. But consolidation is typically not appropriate for appeals arising from cases in different district courts. There are also enough differences between the California and Oregon cases that consolidation would not result in more economical appellate proceedings. To the contrary, consolidation has the potential to inject more complexity into these appeals—particularly if DOJ's emergency motions seeking extraordinarily expedited briefing schedules are granted. That said, California does not oppose this appeal being deemed related to the Oregon appeal, such that oral argument in both cases could be heard by the same panel on the same day.

## BACKGROUND

In September 2025, DOJ sued the Secretary of State and the State of California (together, California) to obtain an electronic, unredacted, and point-in-time copy of California's statewide voter registration list with voters' sensitive information. D. Ct. Dkt. 1 at 16, ¶ 5. Several entities intervened in the action.[1] DOJ claims that it is entitled to the statewide voter registration list under Title III

---

[1] Defendants-Intervenors are the NAACP; NAACP California-Hawaii State Conference; Services, Immigrant Rights and Education Network; and the League of Women Voters of California.

1

of the Civil Rights Act, which permits disclosure of certain records under certain circumstances. D. Ct. Dkt. 1 at 13-14, ¶¶ 46-49. DOJ asserts that it seeks the voter registration list to enforce the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), which require States to have a reasonable program to remove ineligible voters from the list of eligible voters. D. Ct. Dkt. 63 at 16. Independent of Title III, DOJ also claims that it is entitled to California's unredacted voter registration list under the NVRA and HAVA. D. Ct. Dkt. 1 at 14-16, ¶¶ 50-63. DOJ asserts that California's submissions in response to the U.S. Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS) raise question as to the State's compliance with the NVRA and HAVA, D. Ct. Dkt. 63 at 13, despite the Secretary's comprehensive responses to DOJ regarding the data, D. Ct. Dkt. 37-2 at 15-18, 29-30, 50-57.

In September 2025, DOJ also sued the Secretary of State and the State of Oregon (together, Oregon) to obtain an unredacted copy of Oregon's voter registration list. Or. D. Ct. Dkt. 1. An organization and several voters intervened.[2] In the Oregon action, DOJ also brought claims under Title III, the NVRA, and HAVA. Or. D. Ct. Dkt. 1 at 19-20, ¶¶ 65-74. DOJ suggests that particular features

---

[2] Defendants-Intervenors are Our Oregon, Daniel DiIulio, Stephen Gomez, and Emma Craddock.

of Oregon's EAVS submissions raise questions about the State's compliance with the NVRA and HAVA. Or. D. Ct. Dkt. 57 at 10.

To date, DOJ has sued most States in the country—29 States and the District of Columbia—"in an effort to receive the full voter registration files of millions of voters across the entire country." *United States v. Weber*, 2026 WL 118807, at *4 (C.D. Cal. Jan. 15, 2026).[3]

The district court in the California action granted motions to dismiss on January 15, 2026. The court deemed "persuasive" California's argument that the court lacked jurisdiction over the Title III claim, but proceeded with a "merits analysis." *Weber*, 2026 WL 118807, at *7-8. The court held that DOJ had failed to state a Title III claim, in part because it failed to explain "why it believed the NVRA was violated" and "why unredacted voter files for millions of Californians . . . was necessary for the DOJ's investigation." *Id.* at *9. The court held that DOJ had failed to state a claim under the NVRA because there is "longstanding precedent that states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA." *Id.* at *12. And the court rejected DOJ's HAVA claim, in part because DOJ "simply fails to allege any violations of HAVA." *Id.* at *15. The court further held that neither the NVRA

---

[3] *See* Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (updated Mar. 4 2026), https://tinyurl.com/26a3hpu6.

3

nor HAVA preempts California's privacy laws, which protect the confidentiality of certain sensitive voter information and prohibit its disclosure. *Id.* at *13-14, *17. Finally, the court held that DOJ's request for the unredacted voter registration list violates the Privacy Act, E-Government Act, and Driver's Privacy Protection Act. *Id.* at *17-19.

The district court in the Oregon action granted motions to dismiss a few weeks later, on February 5, 2026. The court held that DOJ had failed to state claims under Title III, the NVRA, and HAVA. *United States v. Oregon*, 2026 WL 318402, at *5-13 (D. Or. Feb. 5, 2026). The court also held that Title III does not preempt Oregon law prohibiting production of sensitive voter information. *Id.* at *12.

Both district courts expressed skepticism that DOJ's stated motivation for seeking voter registration lists—enforcing compliance with the NVRA and HAVA—was its real motivation. *See Weber*, 2026 WL 118807, at *10 ("It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database."); *Oregon*, 2026 WL 318402, at *11 ("Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists.").

4

Nearly six weeks after the district court's order in the California action and nearly three weeks after the district court's order in the Oregon action, DOJ filed notices of appeal. D. Ct. Dkt. 131; Or. D. Ct. Dkt. 76. After those appeals were docketed, DOJ filed emergency motions to expedite. Dkt. 12.1; Or. Dkt. 12.1. DOJ proposed briefing schedules in which California and Oregon would have just one week to file their principal briefs. Dkt. 12.1 at 3; Or. Dkt. 12.1 at 3. Those schedules did not mention when the respective Defendants-Intervenors' briefs would be due. California, Oregon, and all Defendants-Intervenors oppose DOJ's motions to expedite. Dkt. 12.1 at 3; Or. Dkt. 12.1 at 3. DOJ also filed motions to consolidate in both the California and Oregon appeals, which California and Oregon both oppose. Or. Dkt. 13.1 at 3.

## ARGUMENT

DOJ has failed to demonstrate that consolidation of this appeal with the Oregon appeal is appropriate. *See* Fed. R. App. P. 3(b)(2) (providing that where "separate timely notices of appeal" have been filed, "the appeals *may* be . . . consolidated by the court of appeals" (emphasis added)).

Consolidation often involves "[t]wo or more appeals from the *same* lower court case." Goelz, Batalden & Querio, Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice (The Rutter Group Apr. 2025) ¶ 6:167 (italics added). By contrast, "[c]onsolidation of separate appeals arising from

5

*different* actions is rarely wise, even if they raise similar issues, because the underlying records will differ." *Id.* ¶ 6:169 (italics added). That is especially so when the actions were decided by different district courts. *See Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 403 (2d Cir. 2004) (noting that cases that were "decided by different district courts" had "not been formally consolidated").

Further, the California and Oregon actions involve different parties. Not only are California and Oregon plainly different parties, but the two cases also involve different sets of Defendants-Intervenors. *See Weber*, 2026 WL 118807, at *1 (Defendants-Intervenors are the NAACP; NAACP California-Hawaii State Conference; Services, Immigrant Rights and Education Network; and the League of Women Voters of California); *Oregon*, 2026 WL 318402, at *1 (Defendants-Intervenors are Our Oregon, Daniel DiIulio, Stephen Gomez, and Emma Craddock). DOJ's request to consolidate appeals arising from different district courts and involving different parties should be denied. *See, e.g.*, *Vurimindi v. City of Philadelphia*, 521 Fed. App'x 62, 64 n.2 (3d Cir. Apr. 8, 2013) ("Because that appeal involves different defendants in a separate lawsuit, it has not been consolidated with this appeal and will be considered separately."); *Gantt v. Messitte*, 1995 WL 378588, at *1 n.2 (4th Cir. June 27, 1995) (denying motion to

consolidate appeals in part because "these appeals arose from separate district court cases").

DOJ asserts that "[b]oth appeals present identical and purely legal questions," but that is untrue. Mot. at 2. California argues that the district court lacked jurisdiction over DOJ's Title III claim while Oregon does not make this argument. *Compare* D. Ct. Dkt. 37-1 at 6, *with* Or. D. Ct. Dkt. 32 at i. And the two district courts relied on different legal grounds for granting the motions to dismiss, which affects the relative importance of certain issues on appeal. *See generally* Goelz, Batalden & Querio, *supra*, ¶ 1:92 ("Fundamentally, the role of appellate courts is to review the district court proceedings for error."). For example, the district court in the California action addressed California's arguments that DOJ's request for the unredacted voter registration list violates federal privacy laws, while the district court in the Oregon action did not address that issue. *Compare Weber*, 2026 WL 118807, at *17-19, *with Oregon*, 2026 WL 318402, at *5. Further, the district court in the California action addressed whether the NVRA and HAVA preempt California's privacy laws, while the district court in the Oregon action addressed whether Title III preempts Oregon's privacy law. *Compare Weber*, 2026 WL 118807, at *13-14, *17, *with Oregon*, 2026 WL 318402, at *12.

DOJ also argues that "[n]either appeal involves factual records and, in any event, the facts alleged in both cases are materially identical." Mot. 2-3. Again,

7

that is untrue. DOJ itself has suggested that it believes California and Oregon may be violating the NVRA and HAVA because of particular—and distinct—features of their responses to the EAVS. *See, e.g.*, D. Ct. Dkt. 63 at 13 (asserting that "California did not provide confirmation notice data for several counties"); Or. D. Ct. Dkt. 57 at 10 (asserting that Oregon's responses showed that it removed a small number of voters "for failure to respond to a confirmation notice").

Further, California and Oregon have different state privacy laws, which are relevant because both district courts considered whether federal law preempts those state laws. California law provides that certain sensitive voter information, like social security numbers, is "confidential and shall not be disclosed to any person." (Cal. Elec. Code § 2194(b)(2); *see also* Cal. Gov. Code § 7924.000 (similar)). Oregon law, meanwhile, provides that "the birth day, month, social security number, and driver license numbers in voter registration files 'may not be disclosed by the Secretary of State or a county clerk' except as 'otherwise required by law.'" *Oregon*, 2026 WL 318402, at *12 (quoting O.R.S. § 247.948(2)).

DOJ argues there is a particular need for "efficiency" in these appeals "given the time-sensitive nature of the Attorney General's records request." Mot. at 3. As explained in detail in California's opposition to DOJ's emergency motion to expedite appeal, this appeal is far from urgent—as DOJ's own conduct highlights. Opp. at 11-13. DOJ sought to pause the litigation at various points in the district

court, and waited nearly *six weeks* to file a notice of appeal after the district court in this case granted the motions to dismiss. *Id.* at 11-12. In any event, consolidating these appeals would not produce the efficiency DOJ now seeks. The two appeals "entail different [legal] standards, different records, and separate analyses," and consolidating them would only serve to "increase the complexity of the consolidated appeal." *United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011). There is "little reason to believe that a consolidated appeal would save significant time or energy compared to two separate appeals." *Id.*

If, however, the Court decides to consolidate the appeals, California respectfully requests that the Court not order California and Oregon to file a single consolidated answering brief. *See* Fed. R. App. P. 28(i) (indicating that in consolidated cases, appellees can generally *choose* whether to file a joint brief). As noted above, California and Oregon have pursued different arguments; the factual records in the cases are different; different state privacy laws are at issue; and the district courts resolved the cases differently. Moreover, if the Court adopts DOJ's proposed briefing schedule in its emergency motion to expedite or imposes other constraints on the briefing schedule, it will be particularly unworkable for California and Oregon to file a joint brief. Filing a joint brief would require significant coordination, which would be difficult on a compressed timeline.

9

Although California opposes consolidation, it is not opposed to the two appeals being treated as related. *See* Circuit Rule 28-2.6 (describing when cases are "deemed related"); Goelz, Batalden & Querio, *supra*, ¶ 6:168 (explaining that "appeals arising from different actions" can be treated as "related" instead of being consolidated (emphasis omitted)). By treating the cases as related, the Court could schedule oral argument in them on the same day before the same panel. *See, e.g.*, *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1078 (9th Cir. 2018) (example of this).

## CONCLUSION

DOJ's motion to consolidate should be denied.

Dated: March 10, 2026  Respectfully submitted,

       *s/Andra Lim*

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
  *Supervising Deputy Attorneys General*
ANDRA LIM
IAN FEIN
  *Deputy Solicitors General*
ROBERT WILLIAM SETRAKIAN
ANNE P. BELLOWS
LISA C. EHRLICH
MICHAEL S. COHEN
KEVIN L. QUADE
WILLIAM BELLAMY
MALCOLM A. BRUDIGAM
  *Deputy Attorneys General*

*Attorneys for Defendants and Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rules 27-1(1)(d) and 32-3 because it contains 2,186 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.

                                              *s/Andra Lim*
                                        Andra Lim

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, I electronically filed the foregoing motion by using the appellate ACMS system.

I certify that the participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/Andra Lim*
Andra Lim
