No. 26-1232

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

SHIRLEY WEBER; in her official capacity as Secretary of State of the State of California; and the STATE OF CALIFORNIA,

*Defendants-Appellees*

NAACP; NAACP CALIFORNIA-HAWAII STATE CONFERENCE; SERVICES IMMIGRANT RIGHTS AND EDUCATION NETWORK; LEAGUE OF WOMEN VOTERS OF CALIFORNIA,

*Intervenors-Appellees.*

On Appeal from the U.S. District Court for the Central District of California

No. 2:25-cv-09149-DOC-ADS

Hon. David O. Carter

---

### NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, AND SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK'S OPPOSITION TO UNITED STATES' MOTION TO EXPEDITE APPEAL

---

Lalitha D. Madduri
Jacob D. Shelly
Christopher D. Dodge
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 968-4490
lmadduri@elias.law

Tyler L. Bishop
Walker R. McKusick
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Ste. 2100
Seattle, WA 98101
Tel.: (206) 656-0177

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

    I.    Federal law has long made voter-list maintenance a state responsibility........3

    II.    DOJ seeks to amass its own collection of private voter data.......................5

ARGUMENT ........................................................................................8

    I.    DOJ has failed to act expeditiously to warrant an expedited appeal..............8

    II.    There is no need to resolve this appeal before the 2026 elections.............10

    III.    DOJ cannot force a voter purge before the 2026 elections. .......................13

CONCLUSION ....................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) .................................................................13

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ..................................................................................3

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ..................................................... 12, 13

*Coleman v. Kennedy*,
  313 F.2d 867 (5th Cir. 1963) .................................................................2

*Foster v. Love*,
  522 U.S. 67 (1997) ................................................................................3

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) ..............................................................................3

*In re Walsh*,
  229 F. App'x 58 (3d Cir. 2007) .............................................................9

*Libertarian Party of Ohio v. Husted*,
  751 F.3d 403 (6th Cir. 2014) ...............................................................11

*Mi Familia Vota v. Hobbs*,
  492 F. Supp. 3d 980 (D. Ariz. 2020) ...................................................10

*Mi Familia Vota v. Hobbs*,
  977 F.3d 948 (9th Cir. 2020) ...............................................................10

*Nader v. Land*,
  115 F.App'x 804 (6th Cir. 2004) ...........................................................8

*Ne. Ohio Coal. for the Homeless v. Husted*,
  696 F.3d 580 (6th Cir. 2012) ...............................................................11

*Pub. Int. Legal Found. v. Benson*,
  721 F. Supp. 3d 580 (W.D. Mich. 2024) .......................................11, 15

*Pub. Int. Legal Found. v. Benson*
    136 F.4th 613 (6th Cir. 2025) ........................................................ 12, 15

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024)........................................................4

*TGP Commc'ns, LLC v. Sellers*,
    No. 22-16826, 2022 WL 17484331 (9th Cir. Dec. 5, 2022)................................11

*United States v. Benson*,
    No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026)......................9

*United States v. Clarke*,
    573 U.S. 248 (2014)........................................................14

*United States v. Oregon*,
    No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ..........................9, 15

*United States v. Powell*,
    379 U.S. 48 (1964)........................................................14

*United States v. Weber*,
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807
    (C.D. Cal. Jan. 15, 2026) ........................................................7, 9, 11, 14

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1........................................................3

**STATUTES**

52 U.S.C. § 20501........................................................3

52 U.S.C. § 20507........................................................ 3, 4, 13, 17

52 U.S.C. § 21083........................................................4

52 U.S.C. § 21085........................................................4

Cal. Elec. Code § 2194(b)(1) ........................................................5

**OTHER AUTHORITIES**

H.R. Rep. No. 107-329 (2001)........................................................................5

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information .......................................................5

**INTRODUCTION**

Over the past year, the U.S. Department of Justice ("DOJ") has haphazardly attempted to collect unredacted copies of virtually every state's voter file. Until the emergency motion it filed last week, however, DOJ has never indicated—in word or deed—that it believes this dispute warrants any particular rush.

DOJ's unprecedented data-collection campaign began last summer, as it traded letters with secretaries of state over the course of several months, seeking to negotiate the disclosure of sensitive voter information. Litigation did not commence until autumn; DOJ sued Oregon and Maine on September 16, 2025, and filed carbon-copy complaints against California and five other states the following week, alleging claims under the National Voter Registration Act ("NVRA"), Help America Vote Act ("HAVA"), and Civil Rights Act of 1960 ("CRA"). Similar suits against 21 other states and Washington, D.C. followed in a trickle; the most recent batch—against New Jersey, Oklahoma, Utah, Kentucky, and West Virginia—was not filed until just two weeks ago. As DOJ workshopped its claims state-by-state, it apparently recognized that two of its three claims lack merit. The complaints filed after the one in California dropped claims under the NVRA and HAVA, proceeding exclusively under a CRA theory. But as each of the three district courts that have reached the merits thus far has recognized, DOJ has not stated a claim under *any* of its theories.

1

This Court should review those claims in the ordinary course. For all its talk of the need for secure elections and pristine voter rolls, DOJ does not allege that California has failed to maintain its voter list as required by law, and none of the relief that DOJ seeks would require California to remove any voters from its rolls. The abstract desire to "investigat[e] *possible violations*" of federal law, Mot. to Expedite Appeal ("Mot.") at 12 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis in original)), does not warrant expediting this appeal.

It would be especially inappropriate to permit DOJ to jump the line for appellate review, force rapid briefing of several novel claims implicating fundamental constitutional principles, and unnecessarily accelerate this Court's own careful review when DOJ itself has never exhibited any similar exigency. DOJ took an entire month to serve its complaint. It chose not to move for a preliminary injunction or other interim relief—in fact, it moved to *stay* the proceedings. And after its complaint was dismissed, it requested an extension of time to seek reconsideration of the district court's order. Ultimately, DOJ took nearly six weeks to appeal, and six more days to move to expedite that appeal.

After all that, DOJ proposes to award itself over *two months* from the district court's final order to docket its opening brief, with Appellees' response brief due just *seven days* later. DOJ has not identified any analogous appeal where the briefing

schedule was similarly lopsided or similarly rushed. Because of DOJ's own dilatory pace and the lack of any real emergency, the motion to expedite should be denied.

## BACKGROUND

### I.     Federal law has long made voter-list maintenance a state responsibility.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the states' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Tellingly, that law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists, *id.* § 20507(c)–(g).

3

Consistent with its central purposes of encouraging voter registration and preventing improper removals, the NVRA imposes strict restrictions on whether, when, and how a state may cancel a voter's registration. For example, states may remove registrants from the voter lists only at the registrant's request, in response to a criminal conviction or finding of mental incapacity, or pursuant to a "general program that makes a reasonable effort to remove the names" of voters who have died or changed residency. *See id.* § 20507(a)(3)–(4). That program must conclude at least 90 days before an election, and removing a voter for non-residency typically requires a multi-year process. *See id.* § 20507(b)–(d).

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain voter registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1), (2)(A). HAVA is abundantly clear that this list is "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). And more generally, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's drafters stressed the importance of maintaining our decentralized electoral system to preserve liberty:

4

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (2001). And while HAVA requires states to create their own centralized statewide voter registration lists, nothing in the law obligates them to disclose records in any manner, including to the federal government.

## II. DOJ seeks to amass its own collection of private voter data.

Last year, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter—information that many states, including California, protect from disclosure. *See* Cal. Elec. Code § 2194(b)(1). As part of that effort, DOJ sent demands for statewide voter lists to nearly every state in the country, though the vast majority have refused to turn over their full, unredacted lists.[1] In response, DOJ has now sued 29 states and the District of Columbia to compel the disclosure of those lists.[2]

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

5

California was among DOJ's first targets. DOJ demanded Secretary Weber provide the State's voter list on July 10, 2025. Compl. ¶ 34, ECF No. 1. DOJ later asserted that it sought the unredacted list "to ascertain California's compliance with the list maintenance requirements" of HAVA and the NVRA. *Id.* ¶¶ 56, 61. In an August 8 response, Secretary Weber offered the state's publicly available list, while explaining that sensitive information—including voters' driver's license and social security numbers—would need to be redacted. *See* Brudigam Decl. Supporting Defs.' Mot. Dismiss at 6 (Ex. 1), ECF No. 37-2. DOJ rejected this offer on August 13. Compl. ¶ 38. Rather than respond to additional concerns the Secretary raised in August 21 and September 12 correspondence, *see id.* ¶ 43; Brudigam Decl. at 24–27 (Ex. 6); *id.* at 57 (Ex. 8), DOJ sued the Secretary and the State of California on September 25.

Just six days after filing, DOJ moved to stay the case, citing the government shutdown. *See* Mot. to Stay, ECF No. 6.[3] After the shutdown concluded, the court

---

[3] As has been common in these cases, DOJ took several weeks to serve the complaint. *See* Proof of Service, ECF No. 28 (noting service on October 24, 2025). That delay has remained the norm even after the government shutdown. In D.C., for example, DOJ filed its complaint on December 18, 2025, but did not serve it until February 2, 2026. *See United States v. Evans*, 1:25-cv-4403-RDM (D.D.C.), ECF No. 31. And it appears DOJ still has not served its complaints in Virginia (filed January 16, 2026) or Washington (filed December 2, 2025). *See generally Unites States v. Beals*, 3:26-cv-00042-RCY (E.D. Va.); *United States v. Hobbs*, 3:25-cv-06078-SKV (W.D. Wash.), ECF No. 8 (court issuing order to show cause why case should not be dismissed for lack of prosecution).

granted intervention to NAACP; NAACP California-Hawaii State Conference; and Services, Immigrant Rights and Education Network ("NAACP-SIREN Intervenors"), and to the League of Women Voters of California. *See* Mins. of Mot. Hr'g at 5, ECF No. 70.

After Rule 12 briefing and argument, the district court dismissed the complaint with prejudice on January 15, 2026. *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026). First, the court held that DOJ did not state a claim under the CRA because DOJ failed to identify a proper basis and purpose for its demand, as required by that statute. *See id.* at *8. Second, DOJ did not state a claim under the NVRA because "nothing" in that law requires California to "disregard" its own privacy laws. *Id.* at *12. And third, DOJ did not state a claim under HAVA because that statute "does not have a disclosure provision" and, more fundamentally, DOJ "simply fail[ed] to allege any violations" of that law. *Id.* at *14–16. The court also recognized that DOJ's demand "violates a plethora of federal privacy laws." *Id.* at *17.

DOJ waited several weeks to appeal its loss. First, it waited nearly two weeks to move the district court to extend its deadline to file for reconsideration until February 12, 2026. *See* Mot. Extension of Time, ECF No. 129. The court denied that motion the following day, indicating that reconsideration was not likely to be granted in any event. *See* Order, ECF No. 130. DOJ then waited until February 25—almost

six weeks after dismissal—to notice its appeal. *See* Notice of Appeal, ECF No. 131. Its motion to expedite did not follow until six days later, on March 3.[4]

## ARGUMENT

### I.    DOJ has failed to act expeditiously to warrant an expedited appeal.

Nothing about DOJ's approach to this matter has been consistent with the "emergency" it now asserts. DOJ filed its complaint nearly six months ago, on September 25, 2025. Rather than move to expedite the proceedings, DOJ moved to *stay* the case, citing the government shutdown. Mot. to Stay, ECF No. 6. *But see* Hr'g Tr. 4:14–5:4, ECF No. 5 (district court noting he did not stop working during the shutdown and desired to keep the case moving). After the district court dismissed the case, DOJ took over a month to notice its appeal and nearly another week to move to expedite. Even now, DOJ requests that its opening brief be due *63 days* after the district court opinion and order granting the motions to dismiss—while proposing Intervenors only get *one week* to respond. *See* Mot. at 3. DOJ's leisurely pace undercuts any claim that this case is so urgent as to require an "immediate ruling" from this Court. Mot. at 1. As courts routinely recognize, expedited proceedings are not warranted where the movant has been dilatory. *See Nader v.*

---

[4] DOJ also moves to consolidate this appeal with that in *United States v. Oregon,* No. 26-1231. NAACP-SIREN Intervenors oppose this motion but are not opposed to treating the cases as related under Circuit Rule 28-2.6. If the Court grants the motion to consolidate, NAACP-SIREN Intervenors request the same briefing and argument rights that they would enjoy absent consolidation.

*Land*, 115 F.App'x 804, 806 (6th Cir. 2004) ("[The Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *In re Walsh*, 229 F. App'x 58, 61 (3d Cir. 2007) (denying motion to expedite appeal when it was not "made promptly").

In addition to prejudicing Appellees, moving as quickly as DOJ proposes would give short shrift to the novel issues in this case. For instance, DOJ is the first litigant ever to invoke the CRA—a statute enacted in 1960—as authority to investigate a state's list maintenance obligations under the NVRA and HAVA. The resolution of that demand has wide-reaching implications, both for the privacy rights of millions of California voters whose sensitive personal data is at stake, and also for the constitutional delineation of authority between the states and the federal government. Further, DOJ has filed 30 of these suits demanding unredacted copies of the states' voter lists. *See supra* Background § II. All three district courts to reach the merits to date have dismissed DOJ's claims, though their reasoning has varied. *See Weber*, 2026 WL 118807, at *20; *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789, at *11 (W.D. Mich. Feb. 10, 2026). Novel and weighty questions hang in the balance, each of which warrants a full airing and thoughtful consideration. The mad—and unwarranted—rush that DOJ proposes would be antithetical to that full deliberation.

9

**II.    There is no need to resolve this appeal before the 2026 elections.**

DOJ's leisurely pace below reflects the reality that there simply is no emergency. Contrary to the overwrought rhetoric in its motion, greenlighting DOJ's conspiracy-laced investigation is not necessary to assure "the security and sanctity of elections in California." Mot. at 1. DOJ's Complaint does not allege any reason to doubt the integrity of California's elections or California's compliance with federal list maintenance obligations. To the contrary, its own request is framed as an application for a fishing license. *See* Compl. ¶¶ 53, 60 (asserting that DOJ lacks the information necessary to "determine" or "evaluat[e]" whether California's list maintenance procedures comply with federal law).

DOJ correctly notes that courts have occasionally expedited appeals involving elections, *see* Mot. at 10, but none of the cited cases resemble this one. In *Mi Familia Vota v. Hobbs*, 492 F. Supp. 3d 980 (D. Ariz. 2020), for example, plaintiffs sought a temporary restraining order and preliminary injunction on September 30, 2020, to extend Arizona's October 5 voter registration deadline. *See id.* at 983. The district court granted relief on October 5, and this Court granted a stay pending appeal a few days later. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948, 951 (9th Cir. 2020). That case merely illustrates that, where a district court alters imminent election deadlines in expedited proceedings, immediate appellate intervention may be warranted. This

10

appeal differs in every way—DOJ did not seek expedited relief below, it lost on its novel claim, and the district court's order did not alter any election deadlines.

The other cases DOJ cites are similarly far afield. In *TGP Communications, LLC v. Sellers*, No. 22-16826, 2022 WL 17484331 (9th Cir. Dec. 5, 2022), this Court expedited the appeal of an order denying a preliminary injunction for a member of the press to attend briefings about an election in which votes were still being counted. *See id.* at *1. In *Libertarian Party of Ohio v. Husted*, 751 F.3d 403 (6th Cir. 2014), the Sixth Circuit expedited an appeal that was noticed the day after the district court declined to order a candidate's name to be included on primary ballots that were set to be mailed to military and overseas voters two days later. *See id.* at 411–12. And in *Northeast Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012), the Sixth Circuit expedited the appeal of an injunction to count ballots cast in the wrong precinct or with deficient ballot affirmations. *See id.* at 583. Again, when plaintiffs bring now-or-never claims in the eye of the election-administration storm after hurried district court proceedings, expedited appellate review may well be appropriate. But where their quarrel is merely with states' routine list maintenance activities, which continue long before and long after every election, the schedule should—and ordinarily does—track ordinary civil litigation. *See, e.g.*, *Pub. Int. Legal Found. v. Benson* (*"PILF"*), 721 F. Supp. 3d 580 (W.D. Mich. 2024) (granting

summary judgment on list maintenance claim filed in 2021), *aff'd*, 136 F.4th 613 (6th Cir. 2025), *cert. denied*, No. 25-437, 2026 WL 568298 (U.S. Mar. 2, 2026).

DOJ's Motion also rests on a fundamental misunderstanding of the NVRA. That statute does not require California—and certainly not the federal government—to ensure the State's "voter rolls are composed solely of individuals who are eligible to vote." Mot. at 14. The NVRA requires California to make only "*reasonable effort[s]*" to remove certain categories of ineligible voters from its rolls. 52 U.S.C. § 20507(a)(4) (emphasis added). Those efforts "need not be perfect, or even optimal," but just "within the bounds of rationality." *PILF*, 136 F.4th at 625; *see also Bellitto v. Snipes,* 935 F.3d 1192, 1207 (11th Cir. 2019) (holding the "NVRA only requires . . . a reasonable effort, not an exhaustive one"). By design, the NVRA recognizes that an underinclusive voter list—where qualified voters are mistakenly removed—is a greater threat to fair elections than overinclusive voter lists, as states have many other tools to effectively mitigate unauthorized voting. DOJ's suggestion that an expedited appeal is necessary to prevent "ineligible voters remaining on [California's] voter rolls," Mot. at 15, thus not only fails to state an emergency—it fails even to assert a legal violation.

DOJ's repeated (and baseless) references to noncitizens on California's voter rolls represent a marked detour from DOJ's own prior allegations in this litigation, and they are untethered from the statutes that DOJ claims it seeks to enforce. *See id.*

12

at 7, 15. DOJ *never* alleged in its letters to California, its Complaint, or in its brief opposing dismissal below that noncitizens are registered to vote in California. *See generally* Exs. 1, 3, Brudigam Decl.; Compl.; Opp'n to Mot. Dismiss, ECF No. 63. Nor is there any credible basis for making such a claim. Nor is such an "investigation" plausibly connected to enforcement of the NVRA, which "requires a reasonable effort to remove only those voters who become ineligible because of death or change of address." *Bellitto*, 935 F.3d at 1195 (citing 52 U.S.C. § 20507(a)(4)); *see also Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) ("By its terms, the mandatory language in [the NVRA's section on removals] only applies to registrants who have died or moved away."). In short, DOJ's new, factually unsubstantiated and legally irrelevant concern about the "specter" of noncitizens being registered to vote in California, Mot. at 15, provides no basis to expedite this appeal.[5]

## III. DOJ cannot force a voter purge before the 2026 elections.

DOJ's self-created emergency appears driven by a hope that it can somehow fashion a favorable ruling from this Court to force California to remove voters from its rolls en masse before the 2026 elections, but this is a fantasy. The rules of civil

---

[5] Because "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations," *Bellitto*, 935 F.3d at 1202, California's list-maintenance obligations under HAVA are the same as under the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(i) (stating list maintenance obligations under HAVA are "in accordance with" the NVRA).

procedure and statutory guardrails make it impossible for DOJ to secure its desired outcome no matter how quickly this Court proceeds.

DOJ seems to assume that any success on appeal will entitle it to immediate production of California's unredacted voter list. That is wrong. As DOJ states, "[t]his is an appeal from the district court's Opinion . . . granting . . . [the] Motion to Dismiss the United States' Complaint." Mot. at 4. Intervenors will show in this appeal why dismissal was appropriate, but even if this Court reverses, all that will result is remand to the district court for further proceedings, including discovery, motions for summary judgment, and, if necessary, trial.

Indeed, even if the legal deficiencies in DOJ's complaint are overlooked, serious disputes of fact are already apparent. The Supreme Court has warned that courts faced with a government demand for documents must ensure the demand was made in "good faith" and the investigation "will be conducted pursuant to a legitimate purpose." *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *see also United States v. Clarke*, 573 U.S. 248, 254–55 (2014) (recognizing that recipients of government document demands are entitled to discovery into the government's motive when they can "make a showing of facts that give rise to a plausible inference of improper motive"). DOJ's own shifting explanations as to what it is doing or why provide reason to question its motive for demanding California's unredacted voter list, and the public record exponentially exacerbates those concerns. *See Weber*,

2026 WL 118807, at *11 (recognizing "there appears to be a different purpose" for DOJ's demand than what it represented); *see also Oregon*, 2026 WL 318402, at *22 (describing "suspicion" about DOJ's stated purpose in seeking Oregon's unredacted voter list). Intervenors are entitled to further explore these issues if the case proceeds.

Moreover, even if DOJ ultimately prevails after any remand, its only relief would be an opportunity to inspect California's unredacted voter list. If DOJ then concludes that California is somehow violating the NVRA or HAVA, DOJ would need to bring a *new* lawsuit alleging a violation of those statutes, and then prevail through any appeals, before it could require California to undertake additional, unspecified list-maintenance efforts. A recent NVRA list maintenance case shows why DOJ's proposed timeline is a nonstarter. In *PILF*, the plaintiffs brought an NVRA claim on November 3, 2021, challenging Michigan's list maintenance efforts. *See* Compl., *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929 (W.D. Mich. Nov. 3, 2021). The district court granted summary judgment to the defendant on March 1, 2024—over two years after the suit was filed. *PILF*, 721 F. Supp. 3d at 580. The Sixth Circuit affirmed on May 6, 2025. *PILF*, 136 F.4th at 613. The Supreme Court denied certiorari just last week. *PILF*, No. 25-437, 2026 WL 568298 (U.S. Mar. 2, 2026). In total, it took nearly four and one-half years to fully resolve that case. And that is without any order directing the state to undertake any changes to its list maintenance program, which would have taken even more time had it been ordered.

15

DOJ here seeks to expedite this appeal in the hopes that it can quickly get California's unredacted voter list to determine if it even has a viable list maintenance claim, and *then* successfully prevail on that hypothetical claim—that is, force the removal of voters from the rolls—in a new lawsuit before the November elections. There is no precedent for such an outcome, and for good reason.

In enacting the NVRA, Congress was careful to include procedural safeguards that prevent rushed removal programs during election season. As DOJ recognizes, *see* Mot. at 2, 14, any program "to systematically remove the names of ineligible voters from the official lists of eligible voters" must conclude at "90 days prior to the date of a primary or general election for Federal office," 52 U.S.C. 20507(c)(2)(A). Because California's primary election is scheduled for June 2, 2026, systematic list maintenance is already prohibited before that date, and the quiet period will resume in early August for the general election. *See* Mot. at 14 (recognizing "California must finish removing nonvoters from its rolls in systemic processes by August 4, 2026"). The NVRA also strictly regulates the circumstances under which California may cancel a voter's registration. *See* 52 U.S.C. § 20507(a)(3)–(4), (b)–(d). The State may not, for instance, remove a voter from the rolls "on the ground that the registrant has changed residence" unless the registrant either confirms the change in writing *or* fails to respond to a duly-transmitted notice *and* has not voted or appeared to vote "in an election during the period beginning on

16

the date of the notice and ending on the day after the date of the **second** general election for Federal office that occurs **after** the date of the notice." *Id.* § 20507(d)(1)(A)-(B) (emphases added). Accordingly, to remove voters based on changes of residence, California would have to provide notice to voters who may have moved and then *wait two full election cycles* before completing the removal. That, obviously, cannot happen before the 2026 elections. Given these safeguards in the NVRA, Congress clearly did not intend for voter removals to happen on an expedited timeline in the runup to elections, but rather only after careful review and multiple checks to prevent improper removals. Because DOJ's newfound urgency is incompatible with this statutory scheme, its motion should be denied.

## CONCLUSION

NAACP-SIREN Intervenors respectfully request that the Court deny DOJ's Motion and instead permit the appeal to proceed on the default schedule.

March 12, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*_____
Lalitha D. Madduri
Jacob D. Shelly
Christopher D. Dodge
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Tel.: (202) 968-4490
lmadduri@elias.law

Tyler L. Bishop
Walker McKusick
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Ste. 2100
Seattle, WA 98101
Tel.: (206) 656-0177

*Counsel for Intervenors-Appellees*
*NAACP; NAACP California-Hawaii*
*State Conference; and Services,*
*Immigrant Rights and Education*
*Network*

18