No. 26-1232

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

SHIRLEY WEBER, *et al.*,

Defendants-Appellees

NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, *et al.*,

Defendants-Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
  Assistant Attorney General
JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...................................2

STATEMENT OF JURISDICTION........................................................2

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF PERTINENT AUTHORITIES.....................................3

STATEMENT OF THE CASE ................................................................3

SUMMARY OF ARGUMENT ...............................................................10

STANDARD OF REVIEW....................................................................12

ARGUMENT

    I.    The DOJ adequately stated the basis and purpose of its demand for an electronic, unredacted copy of California's SVRL under Title III of the CRA instead of an opportunity to view the redacted SVRL in-person...................................12

        A.    The DOJ's assertion that it was investigating California's possible non-compliance with the NVRA sufficiently stated a factual basis for its demand. ........................................................................14

        B.    The DOJ's stated purpose of ensuring NVRA compliance was sufficient.............................................22

        C.    The SVRL is a "record" under 52 U.S.C. 20501..........31

**TABLE OF CONTENTS (continued):**            **PAGE**

II.   The DOJ's demand for an electronic, unredacted copy of California's SVRL does not violate privacy laws ........................................................................... 37

     A.   The DOJ's demand complied with the Privacy Act. .... 37

     B.   The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA claim. ....... 40

     C.   The Driver's Privacy Protection Act does not allow Secretary Weber to deny the DOJ list maintenance data. .............................................................................. 43

     D.   Federal law preempts any contrary California privacy law. ................................................................ 45

III.   Defendants waived any venue objections under 52 U.S.C. 20705. .................................................................. 48

CONCLUSION ................................................................................ 53

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                                                     **PAGE**

*Alabama ex rel. Gallion v. Rogers,*
    187 F. Supp. 848 (M.D. Ala. 1960),
    *aff'd sub nom. Dinkens v. Attorney General of the U.S.,*
    285 F.2d 430 (5th Cir. 1961) ........................................................... 14

*Arizona All. for Cmty. Health Ctrs. v. Arizona Health Care Cost
    Containment Sys.,* 47 F.4th 992 (9th Cir. 2022) ........................... 12

*Arizona v. Inter Tribal Council of Ariz., Inc.,* 570 U.S. 1 (2013) ....... 46-47

*Bostock v. Clayton Cnty.,* 590 U.S. 644 (2020) ....................................... 26

*Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) ............. 48

*Burgert v. Lokelani Bernice Pauli Bishop Tr.,*
    200 F.3d 661 (9th Cir. 2000) ................................................... 12, 30

*Coleman v. Kennedy,* 313 F.2d 867 (5th Cir. 1963)
    (per curiam) .................................................................... 18-19, 22, 24

*Commissioner v. Tellier,* 383 U.S. 687 (1966) ........................................ 29

*Department of Commerce v. New York,* 588 U.S. 752 (2019) ............. 29-30

*Dittman v. California,* 191 F.3d 1020 (9th Cir. 1999) ........................... 38

*Donaldson v. United States,* 400 U.S. 517 (1971) .............................. 16-17

*Electronic Privacy Info. Ctr. v. United States Dep't of Com.,*
    356 F. Supp. 3d 85 (D.D.C.),
    *vacated and remanded on other grounds,*
    928 F.3d 95 (D.C. Cir. 2019) ........................................................ 42

*Ex Parte Siebold,* 100 U.S. 371 (1879) ................................................... 46

## CASES (continued):                      PAGE

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...................................................................25

*Fort Bend Cnty. v. Davis*, 587 U.S. 541 (2019).......................................49

*Foster v. Love*, 522 U.S. 67 (1997).........................................................46

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)...............................23

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ............................................24

*Heckler v. Chaney*, 470 U.S. 821 (1985).................................................18

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962),
    *aff'd sub. nom. Coleman v. Kennedy*................................................19

*In re Duncan*, 713 F.2d 538 (9th Cir. 1983)............................................50

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).....33

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)...............................15, 18

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)
    .................................................12, 14-17, 19-20, 28, 30, 32, 46, 52

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ...................................................................23

*Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338 (1953) .........................51

*Panama R. Co. v. Johnson*, 264 U.S. 375 (1924)....................................49

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601 (2019)......27

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016).........33

**CASES (continued):**                                    **PAGE**

*Project Vote/Voting for Am., Inc. v. Long,*
682 F.3d 331 (4th Cir. 2012) ........................................................ 33

*Prometheus Radio Project v. FCC*, 373 F.3d 372 (3d Cir. 2004) ............. 29

*Public Interest Legal Found., Inc. v. Bellows,*
92 F.4th 36 (1st Cir. 2024) ......................................................... 27

*Pure Oil Co. v. Suarez*, 384 U.S. 202 (1966) ........................................... 49

*Reno v. Condon*, 528 U.S. 141 (2000) ..................................................... 44

*Rouse v. United States Dep't of State*, 567 F.3d 408 (9th Cir. 2009) ...... 37

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ..................................... 38

*Senne v. Village of Palatine*, 695 F.3d 597 (7th Cir. 2012) ..................... 45

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ............................. 3-4

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..................... 51

*United States v. Benson*, No. 1:25-cv-1148,
2026 WL 362789 (W.D. Mich. Feb. 10, 2026),
*appeal pending,*
No. 26-1225 (6th Cir.) ................................. 19-20, 24-25, 32, 34, 36

*United States v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011) .... 12, 31

*United States v. Fausto*, 484 U.S. 439 (1988) ......................................... 25

*United States v. Lillard*, 935 F.3d 827 (9th Cir. 2019) ........................... 23

*United States v. Lynd*, 301 F.2d 818 (1962) ...................................... 16, 18

*United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) ......................... 23

**CASES (continued):**                                                                **PAGE**

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ........................... 19

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) ................................ 49-50

*Webster v. Doe*, 486 U.S. 592 (1988) ........................................................ 18

**CONSTITUTION:**

U.S. Const. Art. I, § 4, Cl. 1 ..................................................................... 46

U.S. Const. Art. VI, Cl. 1 .......................................................................... 47

**STATUTES:**

Civil Rights Act of 1960 (CRA)
      52 U.S.C. 20701 ..................................................................... *passim*
      52 U.S.C. 20703 ..................................................................... *passim*
      52 U.S.C. 20704 ............................................................. 4, 6, 47-48
      52 U.S.C. 20705 ..................................................................... *passim*

Civil Rights Act of 1964
      42 U.S.C. 2000e-2 ........................................................................ 24

Driver's Privacy Protection Act of 1994
      18 U.S.C. 2721 *et seq.* ................................................................... 9
      18 U.S.C. 2721 ....................................................................... 9, 43
      18 U.S.C. 2721(a) ......................................................................... 44
      18 U.S.C. 2721(c) ......................................................................... 44
      18 U.S.C. 2721(b)(1) .................................................................... 44
      18 U.S.C. 2725(1) ........................................................................ 44
      18 U.S.C. 2725(3)-(4) .................................................................. 44

Fair Housing Act of 1968
      42 U.S.C. 3604-3606 .................................................................... 24
      42 U.S.C. 3617 ............................................................................. 24

**STATUTES (continued):**                                                                 **PAGE**

Help America Vote Act of 2002 (HAVA)
- 52 U.S.C. 20901 *et seq.* ...................................................................... 1
- 52 U.S.C. 21083(a) ........................................................................... 43
- 52 U.S.C. 21083(a)(1)(A) ........................................................... 5, 26, 43
- 52 U.S.C. 21083(a)(2)(A) ..................................................................... 5
- 52 U.S.C. 21083(a)(4) ....................................................................... 47
- 52 U.S.C. 21083(a)(5)(A)(i)-(ii) ........................................................... 5
- 52 U.S.C. 21083(a)(5)(A)(iii) ............................................................... 5
- 52 U.S.C. 21111 ...................................................................... 26, 44, 47

National Voter Registration Act of 1993 (NVRA)
- 52 U.S.C. 20501 *et seq.* ...................................................................... 1
- 52 U.S.C. 20501 .......................................................................... 1, 31
- 52 U.S.C. 20501(a)(3) ....................................................................... 25
- 52 U.S.C. 20501(b) .......................................................................... 26
- 52 U.S.C. 20501(b)(1) ....................................................................... 25
- 52 U.S.C. 20501(b)(3) ......................................................................... 4
- 52 U.S.C. 20507(a)(4)(A)-(B) ......................................................... 5, 26
- 52 U.S.C. 20507(i)(1) .................................................................... 5, 27
- 52 U.S.C. 20510(a) ...................................................................... 26, 44

Privacy Act of 1974
- 5 U.S.C. 552(f)(1) ........................................................................... 38
- 5 U.S.C. 552a .................................................................................. 9
- 5 U.S.C. 552a(a)(1) .......................................................................... 38
- 5 U.S.C. 552a(b) ......................................................................... 38-39
- 5 U.S.C. 552a(e)(4) ...................................................................... 39-40
- 5 U.S.C. 552a(g)(1) .......................................................................... 38

Voting Rights Act of 1965
- 52 U.S.C. 10301-10306 ..................................................................... 24
- 52 U.S.C. 10309 ............................................................................. 24

8 U.S.C. 1445(f) ................................................................................ 36

8 U.S.C. 1449 ................................................................................... 36

**STATUTES (continued):**                                                            **PAGE**

8 U.S.C. 1454 .................................................................................36

10 U.S.C. 130c(d)(2)(C) ...............................................................35

13 U.S.C. 214 .................................................................................35

26 U.S.C. 7602(a) (1954 ed.)........................................................16

26 U.S.C. 7604(a) (1954 ed.)........................................................17

28 U.S.C. 1291 .................................................................................2

28 U.S.C. 1331 .................................................................................2

28 U.S.C. 1343 .................................................................................2

28 U.S.C. 1631 ...............................................................................51

30 U.S.C. 1732(b) ..........................................................................35

44 U.S.C. 3501 note
   E-Government Act of 2002,
   Pub. L. No. 107-347, 116 Stat. 2899 .......................................9, 40
   § 208(b)(1)(A)(ii)...............................................................41, 43
   § 208(b)(1)(B)(i) .......................................................................41

44 U.S.C. 3502 ...........................................................................41-42

44 U.S.C. 3502(3)(A) .................................................................41, 43

44 U.S.C. 3572(f)...........................................................................35

52 U.S.C. 10101 .............................................................................23

Pub. L. No. 86-449, § 601, 74 Stat. 90 ................................................23

**REGULATIONS:** **PAGE**

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......................................................39

70 Fed. Reg. 43,904 (July 29, 2005) ...................................................39-40

82 Fed. Reg. 24,147 (May 25, 2017) ......................................................40

**RULES:**

Fed. R. App. P. 2 .....................................................................................52

Fed. R. Civ. P. 12(h) ...............................................................................51

Fed. R. Civ. P. 12(h)(1) ..........................................................................51

Fed. R. Civ. P. 12(b)(6) .................................................................. 7, 11, 12

Fed. R. Civ. P. 1 .....................................................................................14

**MISCELLANEOUS:**

14D Richard D. Freer,
    *Federal Practice & Procedure* § 3801 (4th ed.) ..............................49

U.S. Election Assistance Commission's,
    *About the EAC*, https://www.eac.gov/about) .................................21

Merriam-Webster's Collegiate Dictionary (10th ed. 2002) .....................42

The American Heritage College Dictionary (4th ed. 2002) ....................42

Webster's New World Dictionary of the American Language
    (8th coll. ed. 1960) ........................................................................34

Webster's Third New International Dictionary
    (1966 ed. unabridg.) ......................................................................34

# INTRODUCTION

The United States Department of Justice (DOJ) brought this case against the State of California and California Secretary of State Shirley Weber (collectively, California) alleging, *inter alia*, that California violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the DOJ alleged that California violated the CRA by refusing the Attorney General's demand for an electronic, unredacted copy of its Statewide Voter Registration List (SVRL) to determine California's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.*

The district court granted California's and intervenors' (collectively, defendants) Motions to Dismiss the DOJ's Title III claim, concluding that the DOJ failed to provide an adequate basis and purpose of the demand, *see* 52 U.S.C. 20703, and that its demand violated three federal privacy laws precluding disclosure of unredacted voter information. Because none of the district court's reasons for granting the Motions to Dismiss have merit, this Court should reverse.

- 1 -

## STATEMENT REGARDING ORAL ARGUMENT

The United States requests oral argument. This appeal raises important issues of first impression in this Circuit regarding the proper application of Title III, Section 303, of the Civil Rights Act of 1960 (CRA) (52 U.S.C. 20703). Oral argument likely would assist the Court in understanding the record and resolving the issues presented.

## STATEMENT OF JURISDICTION

This appeal is from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331, 1343. That court entered a final Order granting California's and intervenors' Motions to Dismiss on January 15, 2026. 1-ER-2-34.[1] The United States filed a timely Notice of Appeal. 2-ER-329-331. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1. Whether the DOJ adequately stated the basis and purpose of its demand for an electronic, unredacted copy of California's SVRL under Title III of the CRA.

2. Whether the DOJ's demand violates applicable privacy laws.

---

[1] "_-ER-__" refers to the volume number and pages in the Excerpts of Record filed with this brief.

3. Whether defendants waived any objection to improper venue.

## STATEMENT OF PERTINENT AUTHORITIES

Pertinent statutes are included in an addendum to this brief.

## STATEMENT OF THE CASE

1. a. The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). To that end, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Section 301 of Title III requires that "[e]very officer of election . . . retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701.

The key provision at issue here, Section 303, authorizes the Attorney General or her representative to demand in writing that "the person having custody, possession, or control of such record[s] or

- 3 -

paper[s]" make them "available for inspection, reproduction, and copying." 52 U.S.C. 20703. Such demand "shall contain a statement of the basis and the purpose therefor." *Ibid.*

The Attorney General and her representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704. And, should it be necessary, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

b. Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers . . . come into [election officials'] possession," 52 U.S.C. 20701. Relevant here are the NVRA and the HAVA, which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3).

The NVRA's requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B).

HAVA requires States to implement a centralized computerized SVRL, and to engage in reasonable efforts to maintain that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

2. In the summer of 2025, the DOJ sent a series of letters to Secretary of State Weber, demanding, *inter alia*, an electronic, unredacted copy of the California SVRL that the State maintains under

the HAVA. 1-ER-6-8, 2-ER-263-269. In these letters, the DOJ requested "information regarding [California's] procedures for complying with the statewide voter registration list maintenance provisions of the [NVRA]," listed alleged irregularities with California's voter rolls—such as including "[n]o data . . . regarding duplicate registrants who were removed from the statewide voter registration database" and a more-than-40% drop in the number of "inactive voters" over two years—and stated that its demand was "to assist in our determination of whether California's list maintenance program complies with the NVRA." 2-ER-264, 2-ER-267-268. In response to any federal privacy concerns the Secretary had with the requested information, the DOJ cited Section 304 of the CRA, which precludes, with limited exceptions not applicable here, the Attorney General, her representatives, and DOJ employees from "disclos[ing] any record or paper . . . or any reproduction or copy" produced pursuant to the DOJ's demand. 2-ER-264-265 (citing 52 U.S.C. 20704).

Weber refused the DOJ's demand. Instead, she offered the DOJ the opportunity to inspect its SVRL with private, identifying voter information redacted. 2-ER-258-261.

- 6 -

3. a. In September 2025, the DOJ sued Weber and the State of California, alleging, *inter alia*, that the refusal to provide the United States an electronic, unredacted copy of its SVRL violated Title III of the CRA. ER-307-328. California, along with intervenor-defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). 2-ER-165-189, 2-ER-225-256, 2-ER-270-306. California also argued that the district court "lack[ed] jurisdiction" because the DOJ should have filed suit in the Eastern District of California, where DOJ sent its demand and where the requested records were located. 2-ER-283 (citing 52 U.S.C. 20705); *see also* 2-ER-48.

b. In January 2026, the district court entered a final Order dismissing the DOJ's Complaint without leave to amend. 1-ER-2-34. Although the district court "f[ound] . . . persuasive" California's argument that the DOJ had filed suit in the wrong district, the court nevertheless addressed the claim on the merits due to California's statement at oral argument that it "invite[d] a decision on all the merits in this case," as well as the case's "national importance." 1-ER-13-14 & n.13.

i. The district court rejected the DOJ's Title III arguments after determining as a threshold matter that the demand for federal election

records under Title III was an "ordinary civil action" governed by the pleading standards of the Federal Rules of Civil Procedure rather than a "special statutory proceeding" akin to a proceeding to enforce a subpoena. 1-ER-14. The court first found that the DOJ failed to provide an adequate purpose of the demand, *see* 52 U.S.C. 20703, because Title III targets "voting-related racial discrimination" and "was not passed as a tool for NVRA compliance" given Title III's passage several decades prior to that of the NVRA. 1-ER-15-16.

The court then determined that, even if ensuring NVRA compliance was a valid purpose, the DOJ did not establish an adequate basis for its request—*i.e.*, "specific, articulable facts pointing to the violation of federal law." 1-ER-17. In this regard, the court observed that the DOJ failed to explain "why it believed the NVRA was violated in its letter to the Secretary" and "why unredacted voter files for millions of Californians, an unprecedented request, was necessary for [its] investigation." 1-ER-17. The court further concluded that the DOJ's NVRA-compliance rationale appeared to be a pretext for a federal effort to compile a "centralized voter database" and use it for immigration enforcement. 1-ER-17-20.

- 8 -

ii. The district court also concluded that the DOJ's demand for California's unredacted SVRL violated three federal privacy laws. 1-ER-28-32. First, the court concluded that the DOJ's demand violated the Privacy Act of 1974, 5 U.S.C. 552a, because the records concerned First Amendment activities and because the DOJ failed to identify an applicable System of Records Notice required by the statute and published in the Federal Register that allowed individuals to comment on the Government's collection of these records. 1-ER-28-31.

Second, the court concluded that the DOJ's demand violated the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (44 U.S.C. 3501 note), because the DOJ failed to identify an applicable privacy impact assessment required by the statute that it completed before initiating the collection of personal voter information. 1-ER-31-32.

Finally, the court concluded that the DOJ's demand violated the Driver's Privacy Protection Act of 1994, 18 U.S.C. 2721 *et seq.*, which precludes the disclosure of personal information obtained by the

California Department of Motor Vehicles that is directly transmitted to California's statewide voter registration database. 1-ER-32.[2]

## SUMMARY OF ARGUMENT

The district court erred in dismissing the DOJ's Title III claim on the ground that the DOJ failed to state an adequate basis and purpose of its demand for an electronic, unredacted copy of California's SVRL. The DOJ's assertion that it was investigating California's possible non-compliance with the NVRA sufficiently stated a basis of its demand. The DOJ was not required to allege specific facts to explain why it believed that the NVRA was violated and why California's unredacted SVRL was necessary for its investigation. And, in any event, the DOJ did allege such facts. This assertion also sufficiently stated a proper purpose of the DOJ's demand, as the NVRA is a voting-related statute.

The DOJ's demand for an electronic, unredacted copy of California's SVRL also did not violate any applicable privacy law. The demand did not violate the Privacy Act, which applies only to a federal agency's

---

[2] The district court also rejected the United States' separate claims for relief under the NVRA and the HAVA (independent of the CRA). 1-ER-20-28. The United States does not challenge those separate holdings in this appeal.

disclosure of private information. The demand also did not violate the E-Government Act because it did not initiate a new collection of information and so did not trigger any need for a privacy impact assessment. Finally, the demand did not violate the Driver's Privacy Protection Act because it falls squarely within the Act's exception for disclosure for use by any government agency in carrying out its functions, including law enforcement or other regulatory enforcement purposes. Moreover, the CRA preempts any contrary California privacy law under the Constitution and Supreme Court precedent.

Finally, defendants waived any objection to improper venue. Although California objected to the United States' decision to file suit in the Central District of California as improper under 52 U.S.C. 20705, and labeled its objection "jurisdictional," that provision prescribes venue, not subject-matter jurisdiction. Accordingly, when California withdrew its objection (and no intervenor separately raised it), any objection under 52 U.S.C. 20705 was waived.

## STANDARD OF REVIEW

This Court reviews orders granting Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim—and the legal

- 11 -

questions those motions raise—de novo. *See Burgert v. Lokelani Bernice Pauli Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000); *Arizona All. for Cmty. Health Ctrs. v. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992, 998 (9th Cir. 2022). "As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) (citation omitted). However, courts may "consider materials that are submitted with and attached to the Complaint" as well as "unattached evidence on which the complaint 'necessarily relies.'" *Id.* at 999 (citation omitted). When considering whether a complaint sufficiently states a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Burgert*, 200 F.3d at 663.

## ARGUMENT

**I. The DOJ adequately stated the basis and purpose of its demand for an electronic, unredacted copy of California's SVRL under Title III of the CRA instead of an opportunity to view the redacted SVRL in-person.**

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd I*), to "retain and preserve, for a period of twenty-two months from

- 12 -

the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the State election officer has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

Notwithstanding the plain language of these provisions, the district court dismissed the DOJ's Title III claim on the ground that its demand for an electronic, unredacted copy of California's SVRL failed to state an adequate basis and purpose. 1-ER-15-17. This was error. In its letters to Secretary Weber, the DOJ listed alleged irregularities with California's voter rolls and stated that its demand was "to assist in our determination

- 13 -

of whether California's list maintenance program complies with the NVRA." 2-ER-264. Title III's plain language and relevant precedents compel the conclusion that the DOJ's demand provided a basis and purpose for its request for the information from Secretary Weber that was sufficient under the statute.

### A. The DOJ's assertion that it was investigating California's possible non-compliance with the NVRA sufficiently stated a factual basis for its demand.

1. As a threshold matter, the district court erred in concluding that the United States' demand for an electronic, unredacted copy of California's SVRL is subject to the pleading standards of the Federal Rules of Civil Procedure. 1-ER-14. The DOJ's filing of a request for federal election records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings," but rather "comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Lynd I*, 306 F.2d at 225. The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative process could

be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962).

By seeking records required to be maintained under Section 20701 in court under Title III, the DOJ initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd I*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [Section 303] written demand for records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, production, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's special statutory proceeding limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose

- 15 -

therefor' as set forth in the written demand." *Lynd I*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a State official responding to the Attorney General's demand for federal election records may not utilize litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.* Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (1962) (*Lynd II*).

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd I*, 306 F.2d at 226, is consistent with subsequent Supreme Court precedent. In *Donaldson v. United States*, the Court addressed a provision of the Internal Revenue Code that authorized the Secretary of the Treasury, for "the purpose of ascertaining the correctness of any [tax] return or collecting any such liability[,] to summon the person liable for tax[,] or any person have possession, custody, or care of books of account containing [relevant] entries to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.'" 400 U.S. 517, 517, 524 (1971) (quoting 26 U.S.C. 7602(a) (1954 ed.); ellipses and parentheses omitted). A

- 16 -

neighboring provision "grant[ed] the district courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production.'" *Ibid.* (quoting 26 U.S.C. 7604(a) (1954 ed.)). The Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Id.* at 528-529; *see Lynd I*, 306 F.2d at 226 (allowing judicial determination of whether "written demand has been made" and whether the custodian "ha[s] been given reasonable notice" of the proceeding").

In sum, so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced. *See* 52 U.S.C. 20703.

2. The district court compounded its initial error of applying the wrong analytical framework under the Federal Rules of Civil Procedure to the DOJ's demand by grafting on Section 303's minimal basis-and-purpose requirement the mandate that the DOJ allege "specific,

- 17 -

articulable facts" to explain why it believed that the NVRA was violated and why California's unredacted SVRL was necessary for its investigation. 1-ER-17. There was "no justification" for such a requirement. *Lynd II*, 301 F.2d at 822.

Nothing in the statute purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement. Indeed, the statute provides no meaningful standards that would permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that she may demand, 52 U.S.C. 20701, and a requirement that she communicate "the basis and the purpose" for her request, 52 U.S.C. 20703—not any standard against which to measure her statement of basis and purpose.

Instead, the Attorney General need only "identify in a general way the reasons for [her] demand" for federal election records. *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible* violations of a Federal statute." *Ibid.* (emphasis added); *see, e.g., Bruce*, 298 F.2d at 861 ("The purpose of

- 18 -

this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962) (verbatim), *aff'd sub. nom. Coleman v. Kennedy*, *supra*; *cf. United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950) (concluding that an administrative body to which a statute delegates investigative and accusatory duties may take steps to inform itself as to whether there is probable violation of the law). Accordingly, the only "matters open for determination" by the court when a recipient of the Attorney General's demand challenges that demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd I*, 306 F.2d at 226.

Another district court recently—and correctly—applied these principles in concluding that the DOJ asserted a proper basis for its similar demand for an electronic, unredacted copy of Michigan's SVRL. In *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal pending*, No. 26-1225 (6th Cir. docketed Feb. 27, 2026), the district court held that the DOJ's citation of "the State's

obligations under the NVRA and HAVA," "several purported anomalies within Michigan's voter registration data," and the DOJ's receipt of a "complaint regarding Michigan's compliance with HAVA's requirements relating to the provision of unique voter identifiers" were "sufficient to comply with the CRA." *Id.* at \*8. Quoting *Lynd I*'s statement that courts lack the power "to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand," 306 F.2d at 226, the *Benson* court reasoned that "the CRA does not allow courts to evaluate the substance of the DOJ's purported basis and purpose." *Benson*, 2026 WL 362789, at \*8. The court rejected Michigan's contention that the DOJ's request was made in bad faith as going to the truth of the DOJ's allegations and not addressable on a motion to dismiss. *Ibid.*[3]

The *Benson* decision makes clear that the district court missed the mark on this issue. Unlike in *Benson*, the district court here did not cite, much less attempt to distinguish, *Lynd I* (the most relevant case on this

---

[3] The district court in *Benson* granted the defendants' motion to dismiss for a different reason, which the United States addresses below. *See* pp. 31-37, *infra.*

issue) when second-guessing the sufficiency of the Attorney General's stated factual basis. Nor did the court cite any case to support its position that the Attorney General was required to allege "specific, articulable facts" to explain why it believed that the NVRA was violated and why California's unredacted SVRL was necessary for its investigation in its Title III demand. 1-ER-17. The DOJ's statement that its demand for an electronic, unredacted copy of California's SVRL was "to assist in our determination of whether California's list maintenance program complies with the NVRA" (2-ER-264) sufficiently stated a basis of the demand. The district court erred in concluding otherwise.

3. In any event, the DOJ did explain the basis for its demand. The DOJ's letters to Secretary Weber identified numerous discrepancies and anomalies in California's responses to the U.S. Election Assistance Commission's (EAC) 2024 report.[4] For example: "seven counties failed to

---

[4] The EAC "is an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process." 2-ER-315 (quoting EAC, *About the EAC*, https://www.eac.gov/about). As part of EAC's process in writing its 2024 report, states "reported data on their efforts to keep voter registration lists current and accurate." 2-ER-316 (quoting 2024 report).

provide data regarding duplicate registrations"; "[n]o data was listed in [EAC's] survey . . . regarding duplicate registrants who were removed from the statewide voter database"; California's reported 11.9% of voters "removed because of death" was "well below the national average"; and the number of "inactive voters" in California reported in the 2024 report was more than 40% lower than reported just two years earlier. ER-268. These irregularities were ample basis for the DOJ to assess that it was appropriate to "investigat[e the] possible violation[]" of California's recordkeeping requirements under the NVRA. *Coleman*, 313 F.2d at 868.

**B. The DOJ's stated purpose of ensuring NVRA compliance was sufficient.**

1. The district court erred in concluding that the DOJ failed to state an adequate purpose of its demand for an electronic, unredacted copy of California's SVRL because Title III targets "voting-related racial discrimination" and "was not passed as a tool for NVRA compliance" given Title III's passage several decades prior to that of the NVRA. 1-ER-15-16. The court's error was two-fold.

a. The district court's conclusion that Title III solely targets voting-related racial discrimination finds no support in the statute itself. Interpreting Title III's coverage "begins and ends with the text," *Octane*

- 22 -

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). "To determine plain meaning, [this Court] examine[s] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *United States v. Lillard,* 935 F.3d 827, 833 (9th Cir. 2019) (citation and internal quotation marks omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. McDuffy*, 890 F.3d 796, 801 (9th Cir. 2018) (alteration in original; citation omitted).

Here, no language limiting Title III to voting-rights violations based upon racial discrimination appears anywhere in the statutory text. *See* 52 U.S.C. 20701-20706. By contrast, Congress made clear elsewhere in the CRA where it intended a remedy to be limited to racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (52

- 23 -

U.S.C. 10101). That language is consistent with express limitations Congress made to remedies in other civil rights statutes. *See, e.g.*, 42 U.S.C. 2000e-2 (prohibiting employment practices "because of such individual's race, color, . . . or national origin" in Title VII of the CRA of 1964); 52 U.S.C. 10301-10306, 10309 (prohibiting discrimination "on account of race, color," or language minority status in the Voting Rights Act of 1965); 42 U.S.C. 3604-3606, 3617 (prohibiting discrimination in housing or rentals "because of race, color, . . . or national origin" in the Fair Housing Act of 1968). This Court should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute," *Coleman*, 313 F.2d at 868, constitutes a valid purpose of a demand for federal election records under the statute. *See also Benson*, 2026 WL 362789, at *8 (concluding that "the DOJ may use the CRA to investigate possible violations of the NVRA," which is "a federal election law that protects voting rights").

Moreover, the NVRA was indeed passed based in part on Congress's finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for

- 24 -

Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). The CRA, at the very least, empowers the Attorney General to investigate and assess compliance with other elections statutes, like the NVRA, aimed at increasing voter registration. 52 U.S.C. 20501(b)(1).

b. The court's conclusion that investigating possible non-compliance with the NVRA cannot be a valid purpose of the DOJ's demand because the NVRA's passage post-dated Title III's passage by several decades fails for similar reasons. *See* 1-ER-16. As the *Benson* district court correctly observed, "[t]here is no rule of statutory interpretation that prevents a statute from interacting with, or being used in conjunction with, subsequently enacted statutes." 2026 WL 362789, at *8.

Indeed, the opposite is true: "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *see United States v. Fausto*, 484 U.S. 439, 453 (1988) ("Th[e] classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the

implications of a statute may be altered by the implications of a later statute."). Once the NVRA—a statute devoted to increasing voting by eligible citizens in federal elections and protecting the integrity of the electoral process, *see* 52 U.S.C. 20501(b)—was passed, its enforcement certainly became a permissible "purpose" under Title III of the DOJ's demand for a State's SVRL.[5]

The lack of a comparable tool for records inspection by the Attorney General in the subsequently enacted NVRA and HAVA supplies additional support for the DOJ's position. Both statutes impose record-keeping requirements and may be enforced by the Attorney General. *See* 52 U.S.C. 20507(a)(4)(A)-(B), 20507(i)(1), 20510(a) (NVRA); 52 U.S.C. 21083(a)(1)(A), (a)(2)(A), 21111 (HAVA). Yet neither statute provides its own equivalent to 52 U.S.C. 20703.

The NVRA has a *public*-inspection requirement. It requires a State, with minor exceptions, "for at least 2 years . . . [to] make available for

---

[5] Relatedly, the district court was troubled that "Congress could not have conceived" of "driver's license numbers and partial social security numbers" when it enacted the CRA. 1-ER-16. Congress's "expectations" of how a statute may be applied in light of present circumstances do not control the meaning of the statute. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).

public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). Because of the privacy concerns associated with public inspection, courts have read into the public-inspection provision an option for States to redact "uniquely or highly sensitive personal information," *Public Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases)—a limitation that may apply even when the Attorney General seeks to inspect those same records. And the HAVA has no explicit inspection provision, for the Attorney General or otherwise.

It is implausible that Congress intended for the Attorney General to lack the ability to inspect complete records so pertinent to her enforcement authority under the NVRA and the HAVA. Because it is well-settled that "Congress legislates against the backdrop of existing law," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted), a better inference is that Congress saw no need to provide an inspection provision for the Attorney General in these later-

- 27 -

enacted statutes, because the CRA provided a pre-existing investigative tool.

2. The district court further erred in concluding that, even if assessing NVRA compliance could legally be a sufficient "purpose," "the DOJ states no reason why an unredacted version of California's voter list is *necessary* under the NVRA." 1-ER-16 (emphasis added). Just as with the basis for the demand, *see* pp. 17-21, *supra*, the CRA does not leave "open for determination" the "scope of the order to produce insofar as it concerns the nature of the records or papers." *Lynd I*, 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress." *Ibid.*[6]

In any event, the DOJ explained why it believed the unredacted SVRL to be "necessary" to carry out its enforcement obligations under the

---

[6] Contrary to the district court's suggestion, the Fifth Circuit has not arrogated to courts the task of deciding which records sought "ought ordinarily to be open to legitimate reasonable inspection" and therefore subject to a CRA demand. 1-ER-16 (quoting *Lynd I*, 306 F.2d at 231). The *Lynd I* court merely noted that the district court's "delay" in allowing "inspection and copying" was unwarranted given the nature of the records sought in that case, which were in that case "public" and "ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 230-231.

NVRA. *See, e.g., Commissioner v. Tellier*, 383 U.S. 687, 689 (1966) (explaining that "necessary" in a tax statute means "appropriate and helpful") (citation omitted); *Prometheus Radio Project v. FCC*, 373 F.3d 372, 394 (3d Cir. 2004) (interpreting "necessary" to mean "convenient, useful, or helpful, not essential or indispensable" (internal quotation marks omitted)). The identifiers required by the HAVA for every applicant are necessary for the DOJ to make a verified finding as to the various voter roll registrations that may have problems. 2-ER-111. Absent these identifiers, the DOJ's ability to assess the State's compliance with its recordkeeping requirements under the NVRA is drastically reduced. 2-ER-111.

3. Finally, the court's conclusion that the DOJ's NVRA-compliance rationale appeared to be a pretext for a federal effort to compile a "centralized statewide voter database" and use it for immigration enforcement (1-ER-17-20) was improper and incorrect.

As discussed at length already, *see* pp. 17-21, 28, *supra*, 52 U.S.C. 20703 leaves no room for a court to second-guess the stated basis and purpose for the Attorney General's demand. But the court instead sought out evidence of "pretext[]," following *Department of Commerce v. New*

- 29 -

*York*, 588 U.S. 752 (2019). 1-ER-18. The Supreme Court's discussion of pretext in *Department of Commerce* occurred in a highly unusual factual situation and in the context of the Administrative Procedure Act's arbitrary-and-capricious review, where a core purpose of judicial review is to ensure an agency has "remained within the bounds of reasoned decisionmaking," 588 U.S. at 773 (citation and internal quotation marks omitted). That is quite unlike the role for the court in a Title III "summary proceeding," *Lynd I*, 306 F.2d at 226, and consequently inapplicable here.

The district court also misapplied the standard appropriate at the motion-to-dismiss stage (assuming the ordinary Federal Rules of Civil Procedure govern here) by rejecting the allegations laid out in the United States' Complaint and instead relying on numerous out-of-court statements and news articles. *See* 1-ER-18-20 & n.20-28. The district court was required to take "[a]ll allegations of material fact" in the United States' Complaint "as true and construe[ them] in the light most favorable to the" United States. *Burgert v. Lokelani Bernice Pauli Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). Instead, the district court discredited the United States' allegations (including the assertions in the

letters sent to Secretary Weber) based on reporting and out-of-court statements that were not properly subject to judicial notice.[7] 1-ER-18-20 & n.20-28. That was error. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).[8]

### C.   The SVRL is a "record" under 52 U.S.C. 20501.

Although the district court did not reach the argument, intervenors NAACP and Services, Immigrant, Rights and Education Network raised an additional argument below in support of their Motion to Dismiss. Recall that 52 U.S.C. 20701 requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered election, "all records and papers which come into his possession relating

---

[7] The United States does not object to the district court's reliance on the letters between the parties at the motion-to-dismiss stage as the United States referred to those letters throughout its Complaint. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

[8] It cannot go without mention that the DOJ's stated purpose was *not* pretextual; the only purpose for which the DOJ has requested each state's SVRL is to assess, on an individualized basis, that State's compliance with the voting laws that the DOJ's Civil Rights Division enforces. *Cf.* Order at 7, *United States v. North Carolina Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Jan. 12, 2026) (Doc. 87) (rejecting proposed intervenors' fears regarding a "national voter file" and improper use of voter data as "speculative and premature" in light of a consent order to which the United States voluntarily agreed). And the statements on which the district court relied do not show otherwise.

to any application, registration, payment of poll tax, or other act requisite to voting in such election." Those same records or papers are subject to demand by the Attorney General. 52 U.S.C. 20703. According to intervenors, the SVRL is not such a "record or paper" because it is self-generated by the State and therefore it does not "come into [the] possession" of election officials. 2-ER-247; *accord Benson*, 2026 WL 362789, at *9.

Intervenors hang their argument entirely on the words "come into his possession," which they contend "means to receive or acquire [something] from someone else." 2-ER-247. Under that formulation, individual voters' applications to register fall within Title III, but the State's compilation of those applications in a consolidated SVRL does not. 2-ER-247. Such a reading would effectively carve out vast numbers of federal election records, including SVRLs, which was plainly not the intention of Congress in passing such "sweeping" legislation. *Lynd I*, 306 F.2d at 226. Until *Benson*, no federal court had adopted such a limitation—and *Benson* today stands alone. And even the *Benson* court acknowledged that "the distinction between voter registration

applications and voter registration lists [may seem] overly pedantic." 2026 WL 362789, at *10.

Federal courts have rejected similar attempts to limit the scope of voting records under other statutes. In *Judicial Watch, Inc. v. Lamone*, the defendants argued that a "voter list is not a 'record' under Section 8(i)" of the NVRA, and even if it was, Maryland law allowed election officials to "limit the production of voting-related records more strictly than the NVRA." 399 F. Supp. 3d 425, 434 (D. Md. 2019). The court disagreed. It explained that Maryland misunderstood the NVRA's requirements and the plaintiff was entitled to the registered voter list because "a voter list is simply a partial compilation of voter registrations" encompassed by the Act. *Id.* at 442 (internal quotation marks omitted). The court also was persuaded that the "focus on the information sought" was significant "rather than the particular language used to characterize that information." *Id.* at 440 (citing *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1329, 1343 (N.D. Ga. 2016) (court rejected defendant's argument that plaintiff could not obtain voter list)); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 337 (4th Cir. 2012)

(finding "all records" under Section 8(i)(1) included voter registration records).

Moreover, there is no reason to attribute such a "pedantic distinction" to Congress. *Benson*, 2026 WL 362789, at \*10. The plain terms of Section 20701 dictate otherwise. An officer "come[s] . . . into possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). Secretary Weber acquired the relevant records in the course of carrying out her duties as Secretary of State.

The word "come" cannot create a carve-out for self-generated documents. *See* 2-ER-248 (contrasting "come into [the] possession" with "in the possession of" (brackets in original)). Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance. *See Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) ("to enter upon or into

- 34 -

possession of: acquire esp. as an inheritance"). Numerous statutes (including those cited by intervenors (2-ER-248)) use similar phrases to regulate acquiring information or property *through improper means* or trigger duties to act based on acquiring information or property *at a particular time*.[9] Following this focus on the *when* and *how* an individual gains possession of a record or paper, 52 U.S.C. 20701 places a duty of retention and preservation only on those officers who acquire a record or paper in the course of administering one of the elections mentioned in that provision—and then only "for a period of twenty-two months from the date" of that same election.

The distinction between records "com[ing] into [one's] possession" and being "in [one's] possession," then, is a temporal one—not a distinction between obtaining records from an outside source and through self-generation—as shown by the very example that the *Benson*

---

[9] *See, e.g.*, 44 U.S.C. 3572(f) ("comes into possession of such information by reason of his or her being an officer"); 13 U.S.C. 214 (similar); 30 U.S.C. 1732(b) ("as soon as practicable after it comes into the possession of the Secretary"; "30 days after such information comes into the possession of the Secretary"); 10 U.S.C. 130c(d)(2)(C) (prescribing disclosure timing rules for sensitive information that "came into possession or under the control of the United States more than 10 years before the date on which the request is received").

court cites. *See Benson*, 2026 WL 362789, at \*9. Section 1454(a) of Title 8 imposes dual obligations: If a certificate of naturalization or declaration of intention is lost, "the applicant or any other person who shall have" the certificate or declaration at that time "is required to surrender it to the Attorney General," but so too "the applicant or any other person who . . . may come into possession of it" at a later time must likewise surrender the document. 8 U.S.C. 1454. Reading that distinction as one between documents that a person obtains from an outside source and documents that a person generates for himself, in contrast, would make little sense because no applicant or private person can create a certificate of naturalization nor can any "other person," 8 U.S.C. 1454, create a declaration of intention for a separate declarant. *See* 8 U.S.C. 1445(f), 1449.

In any event, even if intervenors' distinction between self-generated records and papers and those acquired from another source had merit, it would be irrelevant in all but the most marginal cases. Sections 20701 and 20703 focus on individual "officer[s] of election" and "person[s] having custody, possession, or control of such record[s] or paper[s]." So even if someone in Secretary Weber's office generated the requested

- 36 -

record and, according to intervenors, therefore did not "come into . . . possession" thereof herself, any *other* "officer of election" within the Secretary's office that later acquired the record has indeed "come into . . . possession" of the record under intervenors' view and was obligated to "retain and preserve" it. 52 U.S.C. 20701. And Secretary Weber, now "having custody, possession, or control of such record or paper," must "ma[k]e [it] available for inspection, reproduction, and copying." 52 U.S.C. 20703.

## II. The DOJ's demand for an electronic, unredacted copy of California's SVRL does not violate privacy laws.

The district court also erred in concluding that the DOJ's demand for an electronic, unredacted copy of California's SVRL violated three federal privacy laws: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act (DPPA). 1-ER-28-32. And, though the district court did not reach this issue, California's alternative argument that *state* privacy laws prevented disclosure of the SVRL is also meritless.

### A. The DOJ's demand complied with the Privacy Act.

"The Privacy Act was designed to 'protect the privacy of individuals' through regulation of the 'collection, maintenance, use, and

dissemination of information' by federal agencies." *Rouse v. United States Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009) (quoting 5 U.S.C. 552a note). To that end, Section 3 of the Act provides, with certain exceptions, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. 552a(b). An agency, as defined in 5 U.S.C. 552a(a)(1), "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." 5 U.S.C. 552(f)(1) (formerly 5 U.S.C. 552(e)). By its terms, Section 3 does not apply to state and local entities. *See Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003); *see also Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999) (holding that the Act's private right of action in 5 U.S.C. 552a(g)(1) "is specifically limited to actions against agencies of the United States Government" and "do[es] not apply against . . . *state agencies . . .* or state and local officials") (citation omitted).

The Privacy Act's plain language thus makes clear that the district court erred in concluding that the Act barred the DOJ's *demand* for an

electronic, unredacted copy of California's SVRL. 1-ER-29. Because the Act only applies to a federal agency's *disclosure* of private information, it does not prohibit demanding California's disclosure of its SVRL to the United States. Moreover, the Act does not prevent California from complying with that demand because California is not a federal agency.

Said differently, the Privacy Act's prohibitions and allowances on disclosure of personal information, 5 U.S.C. 552a(b), do not apply to records that are not in the possession of the federal government. Although the Privacy Act will control the DOJ's ability to disclose information from California's SVRL, it has no bearing on the Attorney General's demand to California. Accordingly, that Act provides no basis to dismiss the United States' Complaint here.

The district court further erred in concluding (1-ER-28-29) that the DOJ failed to identify a required System of Records Notice (SORN). Under the Privacy Act, the DOJ shall "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records." 5 U.S.C. 552a(e)(4). The DOJ directed the court (2-ER-216 & n.11) to the full list of routine uses for the DOJ's collection of voter information, which can be found in the SORN titled,

- 39 -

JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017). The district court concluded that "[t]his SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for plethora of government activity—some identified to this Court and some not." 1-ER-30. Besides again refusing to take the United States' allegations as true, *see* pp. 30-31, *supra*, the district court faulted the DOJ for not meeting a heightened level of notice not required by the Privacy Act. *See* 5 U.S.C. 552a(e)(4) (listing what each "notice shall include"). The SORN cites specifically the NVRA, the HAVA, and the CRA as statutes for routine use. 2-ER-216.

### B. The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA claim.

The district court concluded that the DOJ's demand violated the E-Government Act because the DOJ failed to identify an applicable privacy impact assessment (PIA) required by the statute that it completed before initiating the collection of personal voter information. ER-31-32. *See* E-Government Act of 2002, Pub. L. No. 107-347, § 208,

116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). This was error.

Pursuant to the E-Government Act, agencies must perform a PIA before "initiating a new collection of information" in particular circumstances. § 208(b)(1)(A)(ii) and (B)(i). A "collection of information" is the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502). When an agency "initiat[es] a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, [and] identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons," the agency must perform a PIA. E-Government Act § 208(b)(1)(A)(ii)(II) and (B)(i).

- 41 -

- 42 -

The DOJ's demand for California's SVRL did not "initiat[e] a new collection of information" and so did not trigger any need for a PIA. "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr. v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.) (*EPIC*), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502. "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, 'start' (a course of action, practice, etc.'" *EPIC*, 356 F. Supp. 3d at 89 (citation omitted; brackets in original) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from none of the sesame category that has existed previously").

The demand in this case did not begin any new collection of information. The Attorney General demanded Secretary Weber to provide the State's SVRL, which the State was required to "define[],

- 42 -

maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Ever since the passage of the HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A) (defining "collection of information"), is not the "*initiat*[*ion* of] a *new* collection of information," E-Government Act, § 208(b)(1)(A)(ii) (emphasis added).

**C.   The Driver's Privacy Protection Act does not allow Secretary Weber to deny the DOJ list maintenance data.**

The district court concluded that the DOJ's demand violated the Drivers' Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq.*, which precludes the disclosure of personal information obtained by the California Department of Motor Vehicles (DMV) that is directly transmitted to California's statewide voter registration database. 1-ER-32. This was error.

Although the DPPA generally prohibits the disclosure of "personal information" obtained by a State DMV in connection with a motor vehicle

- 43 -

record, *see* 18 U.S.C. 2721(a) and (c), 2725 (1) and (3)-(4), the statute explicitly permits certain governmental uses. Under 18 U.S.C. 2721(b)(1), disclosure is allowed "for use by any government agency . . . in carrying out its functions," including law enforcement or other regulatory enforcement purposes. *See also Reno v. Condon*, 528 U.S. 141, 145 & n.1 (2000) ("The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes," including "for use 'by any government agency . . . in carrying out its functions.'") (quoting 18 U.S.C. 2721(b)(1)).

The DOJ's demand for an electronic, unredacted copy of California's SVRL falls squarely within this exception. The DOJ is a "government agency . . . carrying out [one of] its functions," 18 U.S.C. 2721(b)(1): assessing and ensuring compliance with federal elections statutes. *See* 52 U.S.C. 20510(a) (enforcing the NVRA); 52 U.S.C. 21111 (enforcing HAVA). In particular, the DOJ is verifying voter registration records and associated list maintenance activities by state and local entities. Under the governmental-function exemption in Section 2721(b)(1), the United States' use of DMV-provided information is permissible, even though the information originates from a motor vehicle record.

- 44 -

The district court's statement that this information appeared unnecessary to "help [the DOJ] understand whether California conducts a general program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence" misses the mark. 1-ER-32 & n.35 (citing *Senne v. Village of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc)). As noted above, *see* pp. 28-29, *supra*, the absence of identifiers required by HAVA (as in a redacted SVRL) would substantially hamper the DOJ's ability to make verified findings as to the various voter roll registrations that may have problems and thus perform its role of ensuring compliance with the NVRA. 1-ER-111. And, as the Seventh Circuit decision on which the district court relied "emphasize[d]," the court "d[id] not read 'use'" in the DPPA "to mean 'necessary use,' nor d[id it] require" those subject to the DPPA "to adopt some form of 'best practices' not commanded by the statute" to narrow permissible disclosures as much as possible. *Senne*, 695 F.3d at 606 n.12.

**D. Federal law preempts any contrary California privacy law.**

Below, defendants argued that California privacy laws prevented disclosure of the records that the DOJ sought and that the CRA did not preempt that state law. *See* 2-ER-296-297.

- 45 -

Notwithstanding a State's broad constitutional authority over the conduct of federal elections, Congress can override those state choices. U.S. Const. Art. I, § 4, Cl. 1. The Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879) (brackets in original)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-9 & n.1 (2013) (discussing the breadth of the Elections Clause).

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation. Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Lynd I*, 306 F.2d at 226. The CRA, moreover, imposes its own privacy protections for records and papers demanded under Section 20703. *See*

- 46 -

52 U.S.C. 20704. And HAVA requires states to implement a computerized SVRL and establish "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. 21083(a)(4). Section 303 of HAVA mandates that every state "ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Ibid.* Only the United States, through the Attorney General, is authorized to compel records under Title III of the CRA and to enforce Section 303 of HAVA. *See* 52 U.S.C. 20703, 20705 (CRA); 52 U.S.C. 21111 (HAVA).

For the reasons explained above, *see* pp. 12-37, *supra*, the United States is entitled under federal law to compel and inspect California's unredacted SVRLs. To the extent that state law prohibits California from complying with the DOJ's demands—as California insists state law does—that state law must yield. *See* U.S. Const. Art. VI, Cl. 1; *see also Inter Tribal Council*, 570 U.S. at 15 ("States' role in regulating congressional elections—while weighty and worthy of respect—has

- 47 -

always existed subject to the express qualification that it 'terminates according to federal law.'") (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).[10]

## III. Defendants waived any venue objections under 52 U.S.C. 20705.

Although California argued (2-ER-283), and the district court purported to accept (1-ER-13-14 & n.13), that the district court lacked "jurisdiction," the only potential objection to the United States' decision to file suit in the Central District of California was an objection of improper venue.[11] Because all defendants waived any objection to venue, this issue need not affect the appeal.

---

[10] Relatedly, intervenor League of Women Voters of California (LWV) argued that redaction was necessary to protect voters' constitutional rights under the First Amendment. 2-ER-183. However, LWV premised its argument entirely on the rationale that has led courts to infer an ability to redact records under the NVRA's *public*-inspection provision. 2-ER-183 ("The same privacy and constitutional concerns" in the NVRA context "apply equally to requests for the same records under the CRA."); *see* 2-ER-175-177 (discussing the NVRA). But that rationale is inapposite for the CRA, which does not allow for public inspection at all and indeed severely circumscribes the Attorney General's (and her representatives') ability to disclose. 52 U.S.C. 20704.

[11] According to California, the United States should have filed suit in the Eastern District of California. 2-ER-48.

Title III's special venue provision states that "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705. Congress's use of "jurisdiction" in 52 U.S.C. 20705 does not necessarily implicate subject-matter jurisdiction. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 547 (2019) ("Jurisdiction . . . is a word of many, too many, meanings." (citation omitted)). And Section 20705's focus on "where" a case may be brought, not "whether" it may be brought, *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) is a tell-tale sign that the provision prescribes venue and does not limit subject-matter jurisdiction. *See* 14D Richard D. Freer, *Federal Practice & Procedure* § 3801 (4th ed.).

Well before the CRA was enacted, the Supreme Court interpreted a provision of the Jones Act that prescribed where suit may occur and used the word "jurisdiction[]" as "refer[ring] only to venue." *Pure Oil Co. v. Suarez*, 384 U.S. 202, 203 (1966) (citing *Panama R. Co. v. Johnson*, 264 U.S. 375, 384 (1924)); *see Pure Oil*, 384 U.S. at 203 ("Jurisdiction in such actions shall be under the court of the district in which the defendant

employer resides or in which his principal office is located." (citation omitted)). Likewise, when interpreting a statute that provided, "[t]he jurisdiction of the courts herein specified to naturalize persons shall extend only to such persons resident within the respective jurisdiction of such courts," this Court concluded that Congress's use of "jurisdiction" was "merely imprecision," and the statute was just a "special venue provision." *In re Duncan*, 713 F.2d 538, 542 (9th Cir. 1983) (quoting 8 U.S.C. 1421(a)).

This Court's construction of the statute in *In re Duncan* was "consistent with the general distinction between jurisdiction and venue, the former encompassing the court's power to adjudicate and the latter simply the place where that authority may be exercised." 713 F.2d at 542. "The first sentence . . . vest[ed] specified courts with the power to entertain petitions for naturalization; the second sentence define[d] the particular geographical area within which the petition must be brought." *Ibid.* Similarly, Section 20705 provides both *whether* and *where* district courts may compel production of records and papers. The "whether" confers jurisdiction; the "where" sets venue. *See ibid.*; *Wachovia Bank*, 546 U.S. at 316.

- 50 -

Venue, unlike jurisdiction, is waivable. *See Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953); Fed. R. Civ. P. 12(h). So even if the United States erred by bringing suit in the Central District, California affirmatively waived any objection when it "invite[d] a decision on all of the merits in this case" notwithstanding its "jurisdictional argument." 1-ER-13, 2-ER-158. And assuming intervenors could pose an objection to venue, they likewise waived that objection by failing to raise that objection in their Motions to Dismiss. Fed. R. Civ. P. 12(h)(1).[12]

---

[12] If this Court concludes, however, that the district court lacked subject-matter jurisdiction, then the proper course is to vacate and remand with instructions to either dismiss, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998), or transfer the case to the Eastern District of California, 28 U.S.C. 1631. Because *United States v. Oregon*, No. 26-1231 (9th Cir.), raises substantially the same legal questions as this appeal, this Court will need to address the questions presented in this appeal regardless of its conclusion as to jurisdiction.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Weber to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above.

Further, because the district court's application of an erroneous framework has deprived the DOJ of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court [should] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b). In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. 2, 40(d)(1).

- 53 -

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-1232

I am the attorney or self-represented party.

**This brief contains** 10,483 **words, including** 0 **words**

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Andrew Braniff   **Date** 03/18/26

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8**                                                                                   *Rev. 12/01/22*