No. 26-1232

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

SHIRLEY WEBER, *et al.*,

Defendants-Appellees

NAACP, *et al.*,

Intervenors-Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

_____

BRIEF FOR THE DEMOCRATIC NATIONAL COMMITTEE
AS AMICUS IN SUPPORT OF APPELLEES

_____

Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel of Record*

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE ....................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

STANDARD OF REVIEW ...........................................................................3

ARGUMENT .........................................................................................4

    I.    Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand. ..........................................4

        A.    Judicial Enforcement of Title III Demand Requires Independent Judgment. ......................................................5

        B.    DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny. ........................................8

    II.    The Title III Demand Does Not State "the Purpose Therefor" ..................14

        A.    DOJ's Demand for California's Unredacted Voter File Is Unrelated to a Bona Fide NVRA Investigation. ..................................15

        B.    DOJ Failed to Disclose the Actual Purpose of Its Demand for California's Unredacted Voter File ........................................20

CONCLUSION ......................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Am. Civ. Rights Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ........16

*Becker v. United States*, 451 U.S. 1306 (1981) .................................................. 9, 11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) .......................................... 15, 17

*Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026)...............................................2

*Burgert v. Lokelani Bernice Pauli Bishop Tr.*, 200 F.3d 661 (9th Cir. 2000)...........4

*Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820 (9th Cir. 2011) ...........15

*CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*,
   854 F.3d 683 (D.C. Cir. 2017) ....................................................................... 10, 13

*Chambers v. Herrera*, 78 F.4th 1100 (9th Cir. 2023).................................................3

*Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579 (6th Cir. 2002) ..........................19

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ............................................ 6, 17

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024)........................................................................................13

*Dep't of Commerce v. New York*, 588 U.S. 752  (2019)..................................... 3, 14

*Donaldson v. United States*, 400 U.S. 517 (1971).....................................................12

*EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102 (C.D. Cal. 2009) ........................4

*EEOC v. Children's Hosp. Med. Ctr.*,
   719 F.2d 1426 (9th Cir. 1983) (en banc) ................................................... 3, 5, 7

*EEOC v. Fed. Express Corp.*, 558 F.3d 842 (9th Cir. 2009)....................................7

*EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 344–50 (6th Cir. 2024) ..........................12

*Fed. Maritime Comm'n v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975) .................9

*Foster v. Love*, 522 U.S. 67 (1997)..................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ................................3

*Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998) .................................19

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ..................................................13

*Iqbal v. Ashcroft*, 556 U.S. 662 (2008)......................................................... 3, 15

*Katzenbach v. McClung*, 379 U.S. 294 (1964) .......................................................11

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ...................................................10

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)............................................ 9, 10, 11

*LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ...................7

*McLane Co. v. EEOC*, 581 U.S. 72 (2017)............................................................4, 6

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)............................. 10, 12

*NFIB v. OSHA*, 595 U.S. 109 (2022).......................................................................8

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021)..........................................................13

*Okla. Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) ............................................5

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988)................................... 5, 7, 14

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................1

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ..................... 14, 17

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ..................................................4

*Rapanos v. United States*, 547 U.S. 715 (2006) .....................................................11

*Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440 (9th Cir. 1994) ..........................5

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943)..............................................................13

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ........................................................10

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) .............................................10

*Thompson v. Hebdon*, 7 F.4th 811 (9th Cir. 2021) .................................................10

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020).............................................7, 8

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .......................................7

*United States v. Benson*,
  No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).....................12

*United States v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011) ..........................15

*United States v. Exxon Mobil Corp.*,
  943 F.3d 1283 (9th Cir. 2019) (per curiam) .......................................................4

*United States v. Gilleran*, 992 F.2d 232 (9th Cir. 1993) .........................................15

*United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108  (9th Cir. 2012)........7, 9

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995)................................. 9, 12

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ..........................................5

*United States v. Powell*, 379 U.S. 48 (1964) ................................................. passim

*United States v. Will*, 671 F.2d 963 (6th Cir. 1982) ...............................................12

*United States v. Wilson*, 631 F.2d 118 (9th Cir. 1980)...........................................15

*Universal Health Servs. v. United States ex. rel. Escobar*,
  579 U.S. 176 (2016).........................................................................................21

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ....19

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)........................ 8, 17

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1.............................................................................7

## STATUTES

42 U.S.C. § 1306c ........................................................................................21

42 U.S.C. § 2000a-5 ...................................................................................11

52 U.S.C. § 20507 ................................................................................ passim

52 U.S.C. § 20510 ............................................................................... 8, 21

52 U.S.C. § 20703 ................................................................................ passim

52 U.S.C. § 20705 .......................................................................................4

52 U.S.C. § 21083 .......................................................................................19

6 U.S.C. § 111 ..........................................................................................21

Cal. Elec. Code § 2222 .............................................................................21

Cal. Elec. Code §§ 17000–603 .................................................................18

## REGULATIONS

28 C.F.R. § 0.50 .......................................................................................20

39 C.F.R. § 122.2 ......................................................................................21

## EXECUTIVE ORDERS

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ..............................21

## GUIDANCE

U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024) ..................16

U.S. Dep't of Justice, *The National Voter Registration Act of 1993*
   (last updated Nov. 1, 2024) ...................................................................16

## LEGISLATIVE HISTORY

106 Cong. Rec. 7767 .................................................................................6

**RULES**

Fed. R. Civ. P. 81 ..................................................................................11

Fed. R. Evid. 201 ................................................................................15

**SECONDARY SOURCES**

Federalist No. 59 ...................................................................................7

Jack Bass, *Unlikely Heroes* (1982) .........................................................10

Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026)...........................................20

Press Release, U.S. Dep't of Justice, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026)......................................................1

Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018) ...............................................................18

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026) ............................................................13

The Independent Institute, *Harmeet Dhillon | Trump DOJ: Ensuring Election Integrity and Fixing Immigration* (Dec. 9, 2025)...................................10

U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025) .........................................................18

## INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.[1]  Its purposes and functions are to communicate the Democratic Party's position on issues; protect voters' rights; and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates.  The DNC represents over 10 million registered Democrats in California and millions more in this Circuit.

The U.S. Department of Justice (DOJ) has demanded a copy of California's complete, unredacted voter registration list and has made similar demands of every state in this Circuit.  *See, e.g.*, Press Release, U.S. Dep't of Justice, *Justice Department Sues Idaho for Failure to Produce Voter Rolls* (Apr. 1, 2026), https://perma.cc/YR7Q-W6AZ (noting suits against 30 states and the District of Columbia); DOJ Br. 31 n.8 (describing requests to "each state[]").  This forces Democrats to choose between participating in elections and the privacy and security of their personal information.  Conditioning the right to vote on the release of private information "creates an intolerable burden on that right."  *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).  The concerns of ordinary

---

[1]  No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief.  All parties have consented to the filing of this brief.

- 1 -

Democrats are amplified by uncertainty as to the intended use of their data. In turn, the DNC has a compelling interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *Cf. Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76–80 (2026).

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Federal law authorizes the Attorney General to demand voter registration records, but he cannot do so based on pretext. Rather than disclosing "the purpose" for its demand for the complete, unredacted California voter file—as Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–05, requires—DOJ based the demand on routine enforcement of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20501–11. But in fact, DOJ intends to transfer the personally identifying information of every registered voter in California to the Department of Homeland Security (DHS) and is using this unprecedented power grab to "put the [November] election in question." DOJ Mot. to Expedite 13. This deception invalidates the Title III demand. A Justice Department that cannot be forthright with election officials cannot be trusted with the personal data of every registered voter in California.

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), requires scrutiny of any administrative subpoena, scrutiny DOJ's demand

- 2 -

cannot bear. Thus, the district court undertook appropriate review when it declined to "accept rationales that seem 'to be contrived.'" 1-ER-18 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)); *see also EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426 (9th Cir. 1983) (en banc) (review standard), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)). DOJ's Title III demand asserted that "the purpose" therefor was "to assist in our determination of whether California's list maintenance program complies with the NVRA," 2-ER-264, but a request for complete, unredacted voter files does not align with the NVRA's limited and flexible mandate, *see* 52 U.S.C. § 20507(a)(4). Moreover, DOJ's admissions in this Court and others establish intent to use California voters' personal information for purposes unrelated to NVRA enforcement. Because DOJ failed to provide "the purpose" of its Title III demand, this Court should affirm.

## STANDARD OF REVIEW

This Court reviews de novo dismissal for failure to state a claim. *See, e.g.*, *Chambers v. Herrera*, 78 F.4th 1100, 1103 (9th Cir. 2023). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2008). This Court reviews a "decision not to enforce an administrative subpoena for abuse of discretion." *United States v. Exxon Mobil*

- 3 -

*Corp.*, 943 F.3d 1283, 1287 (9th Cir. 2019) (per curiam) (citing *McLane Co. v. EEOC*, 581 U.S. 72, 75 (2017)).  This Court "may affirm . . . on any ground raised below and fairly supported by the record." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (internal citation and quotation marks omitted)).[2]

## ARGUMENT

### I. Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand.

A valid Title III demand must "contain a statement of the basis and the purpose therefor."  52 U.S.C. § 20703.  Title III also affords federal courts "jurisdiction by appropriate process to compel the production" of records or papers so demanded.  *Id.* § 20705.  For more than 60 years, Courts have imposed summons and subpoena requirements to basic scrutiny, *see, e.g.*, *Powell*, 379 U.S. at 57–58, and this Court should impose comparable review before enforcing DOJ's demand for the personally identifying information and voter history of California's 23

---

[2] DOJ framed its Title III demand as a cause of action in a complaint, rather than filing an enforcement application.  2-ER-307–328; *cf., e.g.*, *EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1103–04 (C.D. Cal. 2009).  In turn, the district court granted a motion dismiss for failure to state a claim, rather than denying an enforcement request.  1-ER-3.  On appeal, DOJ argues that the district court "appl[ied] the wrong analytical framework," DOJ Br. 17, while still claiming that this Court must accept its allegations as true, befitting a Rule 12(b)(6) motion, DOJ Br. 12 (citing *Burgert v. Lokelani Bernice Pauli Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000)).  Ultimately, distinctions between review of dismissal—including plausibility requirements and the availability of judicial notice—and review of a decision declining to enforce an administrative subpoena make no difference here.  This Court may affirm under either framework.

- 4 -

million registered voters. *See* Weber Br. 21, 24–27. The Title III demand cannot withstand even this simple inquiry.

**A. Judicial Enforcement of Title III Demand Requires Independent Judgment.**

Adopting the framework for enforcement of an administrative subpoena, federal courts must proceed through a well-established process of judicial scrutiny before enforcing a Title III demand. *See, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950) (recognizing Congress provides for judicial review "[t]o protect against mistaken or arbitrary orders"); *see also* DOJ Br. 8 (advocating for procedures "akin to a proceeding to enforce a subpoena"). This Court must address express limitations in the statute granting subpoena power, as well as judicially imposed constraints on subpoena enforcement. *See, e.g.*, *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994); *Peters v. United States*, 853 F.2d 692, 695–99 (9th Cir. 1988); *Children's Hosp.*, 719 F.2d at 1428. Thus, a court's function is "neither minor nor ministerial" when enforcing an administrative subpoena. *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 217 n.57 (1946).

The plain text of Title III establishes statutory prerequisites to judicial enforcement. Title III's demand provision states,

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such

custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703. Broken down to elements, the Attorney General or his designee must (1) make a demand in writing, (2) for a record or paper required by Title III to be retained and preserved, (3) to the person having custody, possession, or control, (4) including a statement of the basis and the purpose therefor. *Id.* This framework does not require DOJ to establish a prima facie case of a statutory violation before it may obtain responsive records, but it does mandate that the Attorney General disclose "the reasons for his demand." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting 106 Cong. Rec. 7767 (statement of Sen. Keating)).

Judicial safeguards extend beyond statutory prerequisites. Administrative subpoena enforcement requires showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [issuing agency's] possession, and that the administrative steps required by [statute] have been followed." *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *see also McLane*, 581 U.S. at 76–77 ("If the [EEOC] charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome."). This Court has distilled the inquiry into three "critical questions" applicable across agencies and subject matters: "(1) whether Congress has granted

- 6 -

the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Children's Hosp.*, 719 F.2d at 1428; *see also, e.g.*, *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (applying to a DOJ component); *Peters*, 853 F.2d at 699 (same). These provide both substantive and procedural grounds to contest administrative subpoena enforcement. *See, e.g.*, *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848–49, 854–55 (9th Cir. 2009).

Title III demands to a state's chief election officer require a particularly "careful analysis that takes adequate account of the separation of powers principles at stake." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 869 (2020) (addressing horizontal separation of powers). The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," U.S. Const. art. I, § 4, cl. 1, although the Clause "grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States," *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995)). "The President does not feature at all" in the constitutional scheme. *LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135, 159 (D.D.C. 2025) (quoting Federalist No. 59), *appeal docketed*, No. 25-5478 (D.C. Cir. Dec. 31, 2025). Congress may empower the Attorney General to enforce legislation or constitutional

protections, *see, e.g.*, 52 U.S.C. § 20510(a), but DOJ's power goes no further. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (explaining that executive authority "must stem either from an act of Congress or from the Constitution itself"); *see also, e.g.*, *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (recognizing that federal "agencies are creatures of statute [that] possess only the authority that Congress has provided"). Thus, the district court correctly observed that "DOJ cannot go beyond the boundaries provided by Congress and use these legislative tools in a manner that wholly disregards the separation of powers provided for in the Constitution." 1-ER-5. Without limits on Title III authority, DOJ could "exert an imperious control" over the states and "aggrandize itself" at the states' expense. *Cf. Mazars*, 591 U.S. at 867 (addressing "special concerns" for congressional subpoenas implicating the President). As a result, a Title III demand "that raises sensitive constitutional issues" must be subject to rigorous judicial scrutiny. *Id.* at 870–71; *see also* Weber Br. 3, 31, 45–46 (raising federalism and separation of powers concerns).

### B. DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny.

The district court correctly applied the Federal Rules of Civil Procedure to determine that DOJ failed to meet the statutory requirements of Title III. 1-ER-14 (citing *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (Rehnquist, J., in chambers)). The opinion below turned on a finding that DOJ failed to provide "the

- 8 -

basis for its request," 1-ER-15–17, but the district court also scrutinized "the purpose" of the demand and concluded that DOJ cannot demand records under Title III "under the guise of a pretextual investigative purpose," 1 ER-17–20. DOJ claims that the validity of its statement of the purpose for a Title III demand is not "open for determination," DOJ Br. 29–32 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) ), but this attempt to shield executive actions from judicial scrutiny finds no foundation in the text of Title III or applicable case law.

DOJ principally relies on *Lynd*, 306 F.2d at 226, which provides no underlying statutory rationale to exclude the validity of the "statement of the basis and the purpose" of a Title III demand from judicial scrutiny. DOJ Br. 14–19, 28–30 (quoting *Lynd*, 306 F.2d at 226, 230–31). Although this Court bars inquiry into the merits of an underlying investigation when addressing an administrative subpoena, *see, e.g.*, *Fed. Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 434 (9th Cir. 1975), there is no bar to scrutiny of its purpose, let alone scrutiny of a statutory requirement. *See, e.g.*, *Golden Valley*, 689 F.3d at 1113–14 (addressing relevance to a "lawful purpose"); *see also Becker*, 451 U.S. at 1309 (holding that where "enumerated exceptions" do not cover aspects of administrative subpoena enforcement, "*[e]xpressio unius est exclusio alterius*"); *United States v. Markwood*, 48 F.3d 969, 975 (6th Cir. 1995) (requiring review of DOJ compliance "with the statute empowering it"). Indeed, the Supreme Court decided *Powell* just two years

- 9 -

after *Lynd*, holding that courts must assess investigatory purpose. 379 U.S. at 57–58; *see also, e.g.*, *CFPB v. Accrediting Council for Independent Colleges & Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the stated purpose," making notification of actual purpose "an important statutory requirement"). *Powell* and its progeny control. *See, e.g.*, *Thompson v. Hebdon*, 7 F.4th 811, 827 (9th Cir. 2021) (quoting *Miller v. Gammie*, 335 F.3d 889, 893, 900 (9th Cir. 2003) (en banc)).[3]

Beyond an invitation that this Court simply adopt *Lynd* as its own, DOJ argues that Title III triggers a "special statutory proceeding" immune from meaningful challenge and review. DOJ Br. 15 (quoting *Lynd*, 306 F.2d at 225); *see also* The Independent Institute, *Harmeet Dhillon | Trump DOJ: Ensuring Election Integrity and Fixing Immigration* (Dec. 9, 2025), https://www.youtube.com/watch?v=FLtqQqt2FwA (at 2:41) ("The 1960 Civil

---

[3] *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, warranting aggressive judicial action against the "frustration of national purposes." *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962). *See generally* Jack Bass, *Unlikely Heroes* (1982). But as the Supreme Court has recognized, "history did not end in 1965." *Shelby Cnty. v. Holder*, 570 U.S. 529, 552 (2013). In 1965, the Voting Rights Act removed exigency that once justified paltry process by suspending disenfranchising tests and devices and imposing preclearance on states that had used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313, 319, 333–34 (1966). In the six decades between DOJ's last contested Title III action and this one, the Supreme Court has imposed effective judicial oversight on all administrative subpoenas.

- 10 -

Rights Act is actually very clear. The Attorney General doesn't have to show her homework as to what she is going to do with it, and I am her designee. So, I get to ask for that information and they have to give it."). Not so. Where Congress authorizes "a special statutory proceeding," it does so explicitly and in detail. *Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing Title II of the Civil Rights Act of 1964); *see also* 42 U.S.C. § 2000a-5 (detailing procedures). DOJ also claims that a Title III recipient cannot invoke "litigation tools ordinarily available under the Federal Rules" but fails to tie this argument to the text of Title III. DOJ Br. 16. Federal Rule of Civil Procedure 81(a)(5) makes clear that the Federal Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order." *See also Becker*, 451 U.S. at 1307–08. DOJ also contends that under the "plain language" of Title III, courts may not "ascertain … the sufficiency of[] the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." DOJ Br. 15-16 (quoting *Lynd*, 306 F.2d at 226). Yet DOJ merely invokes *Lynd*, and *Lynd* does not rely on the "plain language" of the statute. *Lynd* alone is not enough. *Cf. Rapanos v. United States*, 547 U.S. 715, 754 (2006) (Scalia, J., plurality opinion) (cautioning against applying cases "in utter isolation from the text of [an] Act").

Fundamentally, DOJ does not acknowledge the Supreme Court's seminal decision in *Powell*, this Court's en banc decision in *Children's Hospital Medical Center*, or the many panel decisions within this Circuit concerning administrative subpoenas and civil investigative demands. This Court cannot simply disregard these binding authorities. *See, e.g.*, *Miller*, 335 F.3d at 892–93.[4] DOJ instead highlights *Donaldson v. United States*, 400 U.S. 517 (1971), which offers no relief from judicial scrutiny of statutory requirements. DOJ Br. 16–17. To be sure, judicial scrutiny of an administrative subpoena should not be "inflexible" and should not "impair" bona fide enforcement. DOJ Br. 17 (quoting *Donaldson*, 400 U.S. at 528–29). Yet *Donaldson* also acknowledges that where "the purpose [of an administrative subpoena] is not a legitimate one . . . enforcement may be denied," requiring the precise type of inquiry DOJ seeks to avoid. 400 U.S. at 533.

Finally, Title III provides a "meaningful standard[]" against which courts may measure the "sufficiency or sincerity" of the Attorney General's stated purpose,

---

[4] DOJ urges this Court to follow *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026), insofar as *Benson* adopted the language of *Lynd*. DOJ Br. 19–21; *see also id.* at 20 n.3, 31–37 (acknowledging *Benson* dismissed on alternative grounds). However, *Benson* erred by failing to apply *Powell* and related Sixth Circuit precedent, which require both scrutiny of statutory prerequisites to an administrative subpoena and application of judicial safeguards. *See, e.g.*, *EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 344–50 (6th Cir. 2024); *Markwood*, 48 F.3d at 976–79; *United States v. Will*, 671 F.2d 963, 966–67 (6th Cir. 1982).

contrary to DOJ's contention. DOJ Br. 18. Title III requires a statement of "*the* purpose" for the demand. 52 U.S.C. § 20703 (emphases added). It is not enough for DOJ to offer "*a* proper purpose." DOJ Br. 10 (emphasis added); *see also id.* at 14 (arguing "DOJ's demand provided a . . . purpose for its request"). By using the definite article, Title III requires the Attorney General to offer "a discrete thing": DOJ's complete and accurate purpose and not merely a potential purpose or one purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024). Without a complete statement of the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III demands cannot be "used without restraint"). In other words, the "meaningful standard" is truth. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."); *see also* Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U (compiling recent findings of "serious defects in the government's explanations and representations . . . prompting judges to

discount government submissions, compel expedited discovery, and withhold the presumption" of regularity).

## II.    The Title III Demand Does Not State "the Purpose Therefor."

Applying appropriate scrutiny, DOJ's demand for the complete, unredacted California voter file cannot be enforced because it fails to meet a basic statutory prerequisite, to state "the purpose therefor." 52 U.S.C. § 20703; Weber Br. 22, 28–32; *see also, e.g.*, *Peters*, 853 F.2d at 695–99 (quashing subpoena that did not comply with authorizing statute); *cf.* 1-ER-15–17 (declining to enforce Title III demand at issue based on inadequate statement of "the basis . . . therefor"). DOJ's written demand asserted that the purpose therefor was "to assist in our determination of whether California's list maintenance program complies with the NVRA." 2-ER-264. However, the NVRA's flexible requirements focus on reasonable processes to remove deceased individuals and movers, not line-by-line analysis of voter files to identify all ineligible registrants. *See, e.g.*, *Pub. Int. Legal Found. v. Benson* (*PILF v. Benson*), 136 F.4th 613, 625 (6th Cir. 2025), *cert denied*, No. 25-437, 2026 WL 568298 (U.S. Mar. 2, 2026). DOJ submissions to this Court and others confirm that invocation of the NVRA was pretextual, and so the district court correctly found that DOJ has other intended uses for the data. *See* 1-ER-18 (relying on "[r]epresentations by the DOJ itself"); *cf. Dep't of Commerce*, 588 U.S. at 781–85 (remanding agency action due to pretextual invocation of the Voting Rights Act). This forecloses any

- 14 -

"reasonable inference" that DOJ has plausibly pled the statutory prerequisites to Title III enforcement, *Iqbal*, 556 U.S. at 678, let alone the possibility that DOJ has met its burden to enforce a Title III demand, *see Powell*, 379 U.S. at 57–58; *United States v. Gilleran*, 992 F.2d 232, 233 (9th Cir. 1993).[5]

**A. DOJ's Demand for California's Unredacted Voter File Is Unrelated to a Bona Fide NVRA Investigation.**

Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4), the Act's list maintenance mandate, is limited in scope, and unredacted voter files do not assist in investigating compliance. The "text unambiguously mandates that the states maintain a 'general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of' only two things: death or change of address." *Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019) (quoting 52 U.S.C. § 20507(a)(4)); *see also Am. Civ. Rights Union v. Phila. City Comm'rs* (*ACRU*), 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the

---

[5] Courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This standard applies to appellate courts taking judicial notice of facts supported by documents not included in the record on appeal. *See, e.g.*, *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824 n.3 (9th Cir. 2011). This includes matters of public record and records in related litigation. *See, e.g.*, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also* DOJ Br. 31 & n.7 (conceding judicial notice of DOJ correspondence is permissible (citing *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)).

mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). Any use of voter file data extending beyond these two bases for removal does not assist a bona fide investigation into DOJ's stated purpose: California's compliance with the list maintenance requirements of the NVRA. 2-ER-264.

DOJ's acknowledgment that it wishes to use California's unredacted voter file "to confirm that California's voter rolls are composed solely of individuals who are eligible to vote" dooms the demand. DOJ Mot. to Expedite 14. The NVRA does not create a general "duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters," DOJ Br. 5, and DOJ may not expand federal list maintenance obligations to encompass all eligibility criteria merely by cutting off statutory text, *see* DOJ Mot. to Expedite 6–7, 15 (repeatedly omitting "by reason of the death of the registrant; or a change in the residence of the registrant" (quoting 52 U.S.C. § 20507(a)(4))); *see also id.* at 2 (addressing an additional category of ineligible individuals). For three decades after the NVRA's passage, DOJ recognized the limited and flexible statutory standard. *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 18, 2024), https://perma.cc/J3C2-WSSE. Because the NVRA does not create affirmative obligations to remove registrants other than movers and the

deceased, DOJ's search for *all* ineligible voters overreaches both the stated purpose in its Title III demand and DOJ's own authority. *See, e.g.*, *Youngstown*, 343 U.S. at 587; *see also Coleman*, 313 F.2d at 868 (connecting the statement of purpose to "possible violations of a Federal statute").

Even if DOJ were only focused on movers and deceased registrants, the "reasonable effort" standard in Section 8(a)(4) of the NVRA is limited to "a serious attempt that is rational and sensible," not a "quantifiable, objective standard." *PILF v. Benson*, 136 F.4th at 624–26. Notably, Congress has allowed the "reasonable effort' requirement for movers to be met using U.S. Postal Service data alone, regardless of whether all voters inform the Postal Service of a change of address. *See* 52 U.S.C. § 20507(c)(1). Thus, NVRA compliance cannot be assessed "on an individualized basis," as DOJ suggests. DOJ Br. 31 n.8. Even finding tens-of-thousands of suspected ineligible individuals among California's 23 million registered voters would not establish that California had failed to undertake a "reasonable effort." *See PILF v. Benson*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation); *Bellitto*, 935 F.3d at 1205 ("The state is not required to exhaust all available methods for identifying deceased voters; it need

only use reasonably reliable information to identify and remove such voters.").[6]

Because compliance with NVRA list maintenance requirements turns on state and local procedures rather than a voter-by-voter review of the resulting voter rolls, DOJ's statement of "the purpose" for its voter file demand is implausible and ultimately invalid.[7]

---

[6] DOJ offers a transcript citation to support its claimed need for unredacted voter files "to make a verified finding as to the various voter roll registrations that may have problems." DOJ Br. 29 (citing 2-ER-111); *see also id.* at 45 (similar). Setting aside that this is argument (not pleadings or evidence) and focuses on individual records, the cited transcript describes "HAVA enforcement," not NVRA compliance. 2-ER-111. DOJ also asserts that unredacted voter files are needed "to assess the State's compliance with its recordkeeping requirements under the NVRA." DOJ Br. 29. However, the written Title III demand's ostensible purpose was only "to assist in our determination of whether California's *list maintenance program* complies with the NVRA." 2-ER-264 (emphasis added). In any case, California's complete, unredacted voter file is a snapshot that does not reflect broader record retention. *See* Cal. Elec. Code §§ 17000–603 (retention requirements). This belated and implausible claim is clear evidence of pretext.

[7] Thus, for nearly two decades, DOJ neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017 information requests); *see also* Consent Judgment, *United States v. Kentucky*, No. 3:17-cv-94 (E.D. Ky. July 3, 2018), ECF No. 39. In parallel litigation, DOJ has placed great weight on having obtained unredacted voter files from Texas and Georgia in 2006 and 2008, respectively. DOJ Br. 21–22 & n.5, *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 24, 2026). But DOJ did not pursue enforcement actions based on either file, *see* U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025), https://perma.cc/A3JG-CNZA, and soon abandoned attempts to use voter files to assess NVRA compliance.

The Title III demand to California is unique among dozens of demands for states' complete, unredacted voter files, insofar as it does not invoke HAVA enforcement as part of the purpose of the demand, reinforcing that NVRA enforcement is not DOJ's complete and accurate purpose here. 2-ER-264; *cf., e.g.*, Compl. ¶ 51, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sept. 16, 2025), ECF No. 1. The assertion of varying purposes for identical voter file demands suggests that DOJ's claimed enforcement aims are mere pretext. *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (deeming departures from substantive and procedural norms to be evidence of pretext). Moreover, DOJ requested that this Court expedite its appeal because "California voters need to know that . . . voters with multiple records are not registered to vote." DOJ Mot. to Expedite 2. HAVA addresses database design requirements, including consolidation of duplicate records. *See* 52 U.S.C. § 21083(a)(2)(B)(iii). The NVRA does not. *See id.* §§ 20501–11. Ultimately, DOJ invoked HAVA enforcement interests in both its motion to expedite and its merits brief. *See* DOJ Mot. to Expedite 6–7, 15; DOJ Br. 1, 4–5, 27, 44. This shifting rationale reinforces that DOJ's statement of "the purpose" of its demand was mere pretext. *See, e.g.*, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (addressing inconsistency between "contemporaneous reasons" and litigation positions); *see also Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (collecting cases).

**B.    DOJ Failed to Disclose the Actual Purpose of Its Demand for California's Unredacted Voter File.**

While DOJ's statement of the purpose for its Title III demand fails to bear scrutiny on its own, activity in related litigation confirms that DOJ failed to provide the requisite statement of "the purpose" for its demand here. 52 U.S.C. § 20703. Take the recent settlement in a similar Title III voter file suit in Oklahoma. *See* Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026), https://perma.cc/8XHQ-MSJG. Although DOJ had alleged that "the purpose of the demand" was to "ascertain Oklahoma's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 21, *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026), ECF No. 1, the settlement allowed DOJ to use voter data both to "assess the State's compliance with [the] NVRA [and] HAVA" and for "other purposes outlined in 28 C.F.R. §§ 0.50-51." Okla. Settlement Agreement ¶ 2 (Mar. 24, 2026), https://perma.cc/CX66-S7G2. These expanded purposes incorporate the full functions of DOJ's Civil Rights Division, including coordination with other DOJ components and assistance to other federal departments and agencies. *See* 28 C.F.R. § 0.50(d)–(e). Even if these expanded purposes were additions to bona fide NVRA and HAVA enforcement—and they are not—this renders DOJ's written statement at most a half-truth. Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . .

- 20 -

misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016).

DOJ has admitted in another parallel case that it intends to provide complete, unredacted voter files it obtains using Title III to DHS, a purpose unrelated to NVRA enforcement. *See* Tr. at 65:1–6, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026), ECF No. 47 ("THE COURT: What I'm saying is can you take this list and send it to Homeland Security . . . . MR. NEFF: In compliance with all federal laws, yes, and we intend to do so."). DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. § 20510(a) (DOJ authority). Even if DOJ were only interested in comparing the California voter file with DHS data to identify voters who may not meet state eligibility requirements, this would not advance NVRA enforcement. With respect to movers, the "reasonable effort" requirement can be met using U.S. Postal Service data alone, as noted above. 52 U.S.C. § 20507(c)(1); *see also* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials); Cal. Elec. Code § 2222 (allowing use of Postal Service data). Federal data concerning deaths is held by the Social Security Administration (SSA), not DHS. *See* 42 U.S.C. § 1306c(d) (defining SSA Death Master File); Exec. Order No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that SSA allows election officials

- 21 -

to access the Death Master File).  Ultimately, the NVRA places responsibility for voter registration list maintenance with the states and does not authorize DOJ to search for individual registrants who federal officials suspect may not meet state eligibility requirements.  Any attempt to do so is unrelated to "whether California's list maintenance program complies with the NVRA."  2-ER-264.  Thus, the statement of "the purpose" of DOJ's Title III demand is at best inaccurate and must be deemed invalid.  Without a valid statement of "the purpose" of the demand, 52 U.S.C. § 20703, DOJ's enforcement request must be dismissed or denied.

## CONCLUSION

For the foregoing reasons, the Court should affirm on the alternative ground that the Title III demand failed to provide "the purpose therefor."

Dated:  April 20, 2026

Respectfully submitted,

*Daniel J. Freeman*
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 26-1232

I am the attorney or self-represented party.

**This brief contains** 5,678 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Daniel J. Freeman **Date** 4/20/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 26-1232

The undersigned attorney or self-represented party states the following:

○ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

United States v. State of Oregon, No. 26-1231

**Signature** | /s/ Daniel J. Freeman | **Date** | 04/20/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

---

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17** | *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** 26-1232

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

Democratic National Committee

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
   ○ Yes  ◉ No

   If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
   ○ Yes  ◉ No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."

[2] To the extent it can be obtained through due diligence.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**  *1*  *New 12/01/24*

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

N/A

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

N/A

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes    ⦿ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

N/A

I certify that *(select only one)*:

⦿  this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○  the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○  I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** /s/ Daniel J. Freeman   **Date** 4/20/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                    2                    *New 12/01/24*