No. 26-1232

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

SHIRLEY WEBER, *et al.*,

Defendants-Appellees

NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, *et al.*,

Defendants-Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
  Assistant Attorney General
JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...............................................................................1

ARGUMENT

I.    The Attorney General's demand for an electronic, unredacted copy of California's SVRL satisfied Title III's requirements...........................................................2

    A.    The DOJ's demand for California's SVRL is not subject to the ordinary operation of the Federal Rules of Civil Procedure....................................3

    B.    The DOJ provided a valid factual basis for its demand. ...................................................................7

    C.    The DOJ's stated purpose of investigating California's possible non-compliance with the NVRA was sufficient.......................................12

    D.    California's SVRL is a record that "comes into possession" of a State election official under 52 U.S.C. 20701............................................................19

    E.    Title III preempts California privacy laws. .................25

II.    The DOJ's demand for an electronic, unredacted copy of California's SVRL does not violate federal privacy laws. ..................................................................................27

    A.    The Privacy Act does not warrant dismissal of the DOJ's CRA claim. ................................................27

**TABLE OF CONTENTS (continued):**           **PAGE**

B.     The E-Government Act and Driver's Privacy
Protection Act do not prevent the DOJ from
obtaining an electronic, unredacted copy of
California's SVRL. ....................................................... 31

CONCLUSION ................................................................................. 33

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF CONTENTS

**PAGE**

**CASES:**

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ............. 16, 30

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) .. 7, 12-13

*Donaldson v. United States*, 400 U.S. 517 (1971) ................................. 5-6

*Fischer v. United States*, 603 U.S. 480 (2024) ........................................ 23

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ................................. 6, 15

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................. *passim*

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ............................................. 9

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) .............................. 15

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) ........................... 15

*United States v. Benson*, No. 1:25-cv-1148,
 2026 WL 362789 (W.D. Mich. Feb. 10, 2026),
 *appeal pending*, No. 26-1225 (6th Cir.) ................................... 10, 22

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ............................ 5

*United States v. Powell*, 379 U.S. 48 (1964) ........................................... 4-5

*United States v. Solakyan*, 119 F.4th 575 (9th Cir. 2024),
 *cert. denied*, 146 S. Ct. 91 (2025) .................................................. 24

*United States v. Taylor*, 487 U.S. 326 (1988) ........................................... 6

*Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .............. 19-20

**CONSTITUTION:**                                         **PAGE**

U.S. Const. Art. VI, Cl. 1 .............................................................. 25

**STATUTES:**

Civil Rights Act of 1960 (CRA)
    52 U.S.C. 20701-20706 ............................................. 5, 12
    52 U.S.C. 20701 ....................................................... *passim*
    52 U.S.C. 20702 ........................................................ 23-24
    52 U.S.C. 20703 ....................................................... *passim*
    52 U.S.C. 20704 ................................................. 17, 25-26
    52 U.S.C. 20705 .............................................................. 3

Civil Rights Act of 1964
    42 U.S.C. 2000e-2 ......................................................... 12

Drivers' Privacy Protection Act (DPPA),18 U.S.C. 2721 *et seq.*
    18 U.S.C. 2721(b)(1) .................................................... 31

Fair Housing Act
    42 U.S.C. 3604-3606 .................................................... 13
    42 U.S.C. 3617 ............................................................. 13

Help America Vote Act of 2002 (HAVA)
    52 U.S.C. 21083(a)(5)(A)(i)-(ii) .................................... 17

National Voter Registration Act of 1993 (NVRA)
    52 U.S.C. 20501(a)(3) ................................................... 16
    52 U.S.C. 20507(i) ........................................................ 16
    52 U.S.C. 20507(i)(1) .................................................... 20

Privacy Act of 1974
    5 U.S.C. 552a(a)(5) ...................................................... 20
    5 U.S.C. 552a(b) ........................................................... 27
    5 U.S.C. 552a(e)(4) .................................................... 29-30
    5 U.S.C. 552a(e)(7) ...................................................... 28
    5 U.S.C. 552a(o)(1) ...................................................... 30

**STATUTES (continued):**                                    **PAGE**

Voting Rights Act
     52 U.S.C. 10301-10306 ................................................................ 13
     52 U.S.C. 10309 ........................................................................... 13

Uniform and Overseas Citizen Absentee Voting Act (UOCAVA)
     52 U.S.C. 20301-20311 ............................................................... 13
     52 U.S.C. 20302 ........................................................................... 13

26 U.S.C. 7605(b) ..................................................................................... 5

44 U.S.C. 3501 note
     E-Government Act of 2002,
     Pub. L. No. 107-347, 116 Stat. 2921-2922 ....................................... 31

**REGULATIONS:**

28 C.F.R. 0.50(a) .................................................................................... 29

68 Fed. Reg. 47,610 (Aug. 11, 2003) ....................................................... 29

70 Fed. Reg. 43,904 (July 29, 2005) ........................................................ 29

82 Fed. Reg. 24,147 (May 25, 2017) ........................................................ 29

**EXECUTIVE ORDER:**

Executive Order No. 14,399 .................................................................... 18

**MISCELLANEOUS:**

The National Comm'n on Federal Election Reform, *To Assure*
     *Pride and Confidence in the Electoral Process* (2001),
     https://tinyurl.com/yh793ss7 ....................................................... 32

U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool,
     https://tinyurl.com/n7fpu4zz (last visited Apr. 24, 2026) .............. 18

## INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain California's statewide voter registration list (SVRL) to ensure that California is conducting its federal elections in a manner that will ensure the public of a trustworthy process. The DOJ is not doing anything particularly new. The DOJ's request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA).

This Court should reverse and remand because both grounds on which the district court relied in dismissing the DOJ's Title III claim are meritless. First, the court erred in concluding that the DOJ's demand for election records failed to state an adequate basis and purpose. U.S. Br. 12-31.[1] Second, the district court erred in concluding that the DOJ's

---

[1] "U.S. Br. __" refers to the page numbers of the United States' Opening Brief filed with this Court. "Cal. Br. __" refers to the page numbers of California's Response Brief filed with this Court. "NAACP Br.

demand for an electronic, unredacted copy of California's SVRL violated the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act. U.S. Br. 37-45. The arguments of California and intervenors (collectively, defendants) on appeal reiterate the district court's mistakes, and their proposed alternative bases to affirm lack merit and should be rejected. This Court should reverse the dismissal order and remand with instructions directing the district court to compel Secretary Weber to produce the requested SVRL to the DOJ forthwith.

## ARGUMENT

**I. The Attorney General's demand for an electronic, unredacted copy of California's SVRL satisfied Title III's requirements.**

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), to "retain and preserve, for a period of twenty-two months from the date

---

__" refers to the page numbers of Intervenor NAACP's Response Brief filed with this Court. "LWV Br. __" refers to the page numbers of Intervenor League of Women Voters' Response Brief filed with this Court. "DNC Br. __" refers to the page numbers of Democratic National Committee's *Amicus Curiae* Brief filed with this Court. "__-ER-__" refers to the volume and page number of the Excerpts of Record the United States filed with its Opening Brief. "Add. _" refers to the page number of the Addendum the United States included with this Reply Brief.

of any [federal] general, special, or primary election . . . *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (emphasis added). The Attorney General may "demand in writing" that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. Upon a State election official's rejection of that demand, the Attorney General may seek a federal court order "to compel the production of such record or paper." 52 U.S.C. 20705.

### A. The DOJ's demand for California's SVRL is not subject to the ordinary operation of the Federal Rules of Civil Procedure.

As a threshold matter, the federal court hearing on the DOJ's demand for federal election records is a "special statutory proceeding" not subject to the ordinary pleading standards and panoply of Federal Rules of Civil Procedure. *Lynd*, 306 F.2d at 225-226. Instead, the Attorney General need only make a "simple statement" that the State election official against whom an order of reproduction is sought has "failed or

refused to make such papers 'available for inspection, production, and copying.'" *Id.* at 226 (quoting 52 U.S.C. 20703 (formally 42 U.S.C. 1974b)). "There is no place" for the State election official to challenge, or the court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703 (formally 42 U.S.C. 1974b)). "In sum," as the United States explained in its Opening Brief (at 17), "so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced."

Defendants insist greater inquiry is allowed based on *United States v. Powell*, 379 U.S. 48 (1964), but that case, which involved an IRS administrative summons under the Internal Revenue Code (IRC), is inapposite. Cal. Br. 26-27; NAACP Br. 21-22; LWV Br. 20-22. The Supreme Court explained in *Powell* that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was

- 4 -

permitted because it was specifically authorized by Section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). No similar language limits the Attorney General's authority to compel records under the CRA. *See* 52 U.S.C. 20701-20706.

Moreover, even with language in the IRC limiting the production of records to those that are the subject of "[]necessary" investigations, the Government "'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)).

As the Supreme Court subsequently made clear in *Donaldson v. United States*, "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. 517, 529 (1971). Such is the case here, where the "matter should be set down without delay for suitable hearing on the matters open for determination"—in particular, "whether the written demand has been

made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226. Actions by the Attorney General to compel Election Records cannot "be plagued by the injection of collateral issues" because it "would make the investigation interminable." *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (citation omitted).

California argues that *Donaldson* holds only that "a district court can *choose* to 'limit the application of the rules in a summons proceeding' when appropriate." Cal. Br. 25 (quoting *Donaldson*, 400 U.S. at 529-530). Even if that is so, a district court's discretion is not unbounded. *See United States v. Taylor*, 487 U.S. 326, 336 (1988) ("[A] decision calling for the exercise of judicial discretion hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." (citation and internal quotation marks omitted)). And 52 U.S.C. 20703's summary procedure, combined with its lack of any meaningful standard against which to judge the Attorney General's demand (U.S. Br. 18)

dictate that a district court steps beyond its authority in attempting to evaluate the sufficiency of the Attorney General's written demand.[2]

## B. The DOJ provided a valid factual basis for its demand.

The requirement that the Attorney General provide an adequate basis for her demand for federal election records under Title III is simple to satisfy. The Attorney General need only "identify in a general way the reasons for [her] demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added). The only matters for a court to resolve are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226. Additionally, if "a genuine dispute subsequently arises as to whether or not any specified particular

---

[2] The NAACP and the LWV further contend that *Lynd* is inapposite on this issue because, there, the Attorney General unquestionably "had a sufficient basis for [his] demand and invoked Title III for a valid purpose." NAACP Br. 23-24; *see* LWV Br. 24-25 (similar and noting that *Lynd* involved records lacking confidential information). That distinction says nothing about whether proceedings called for by the statute are or are not summary in nature—only whether the statute was satisfied in a given case.

paper or record comes within this broad statutory classification," that too may be addressed by the court. *Ibid.*

Defendants argue that the DOJ's letters to Secretary Weber failed to state a basis for its demand for an unredacted copy of California's SVRL. First, defendants fault the DOJ for not separately stating a basis for its demand in its August 13, 2025, letter to Secretary Weber (the August 13 letter) that first invoked the CRA. Cal. Br. 32-33; NAACP Br. 35-36; LWV Br. 32-34. This argument elevates form over substance in an area where notice is the operative concern.

The August 13 letter stated that the "basis and purpose" of the DOJ's demand for an unredacted copy of California's SVRL was "to assist in our determination of whether California's list maintenance program complies with the NVRA." 2-ER-264. Under any reasonable interpretation of this statement the basis for the DOJ's demand is clear—that California's list maintenance program may violate the NVRA. And the DOJ's preceding July 10, 2025, letter to Secretary Weber (the July 10 letter), provided factual bases for that concern: numerous discrepancies and anomalies in California's responses to the Election Assistance Commission's Election Administration and Voting Survey (EAVS)

indicating possible violations of the NVRA's recordkeeping requirements. U.S. Br. 21-22.

Citing *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), the NAACP nevertheless contends that the DOJ could not look to all the letters to supply a basis for its demand. NAACP Br. 36-37. In *Niz-Chavez*, the Supreme Court held that an alien-removal statute referring to "*a* notice to appear" requires providing an alien with one document containing all the statutorily required elements in order to stop the clock on his "continuous[] presen[ce]" in the United States and thus reduce his likelihood of entitlement to discretionary relief, 593 U.S. at 160-161 (emphasis added)—hardly similar to requiring state officers with no personal rights at stake to respond to a demand by producing certain records they are statutorily obligated to preserve. *Cf. id.* at 172 (noting that "the federal government s[ought] a procedural advantage against an individual" in the removal process).

As the *Niz-Chavez* Court noted, its interpretation may have been different if the statute had referred merely to "notice" without any article, as opposed to "a notice." 593 U.S. at 163. That is how "demand" is used in 52 U.S.C. 20703. Records and papers must be made available "upon

- 9 -

demand in writing"—not "a demand in writing." Only in the next sentence, does the statute then refer back to whatever written demand has been given (which may be made up of multiple writings) and use the adjective "[t]his" to refer collectively to the entire demand. And Section 20703's use of "a" is in the context of "a statement of the basis and the purpose" that forms *part* of this demand. 52 U.S.C. 20703. Because the August 13 letter *expressly* specified that the July 10 letter provided California with the statement of the basis and purpose of the DOJ's demand, "the DOJ's communications collectively put [California] on notice of the basis and purpose of its request, which is sufficient to comply with the CRA." *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789, at *8 n.3 (W.D. Mich. Feb. 10, 2026), *appeal pending*, No. 26-1225 (6th Cir. oral argument scheduled for May 13, 2026).

Defendants also challenge the DOJ's reliance on the July 10 letter on the ground that it did not identify discrepancies in California's responses to the EAVS indicating California's non-compliance with the NVRA, but merely requested information about California's submissions. Cal. Br. 33-34; LWV Br. 34-35. Not so. The July 10 letter identified such discrepancies and requested an explanation from California to assist the

DOJ in determining whether the discrepancies evinced a violation of the NVRA or something else. 2-ER-264. No more persuasive is defendants' related contention that the DOJ failed to provide any reason to believe that the identified discrepancies indicated California's non-compliance with the NVRA. Cal. Br. 33 & n.6; LWV Br. 35 & n.8; *see also* NAACP Br. 37-38. Defendants essentially argue that the DOJ must allege specific facts underlying its NVRA claim in demanding federal election records under Section 20703—a requirement that, as noted above, finds no support in relevant precedent.

In any event, the discrepancies and anomalies in California's responses to the EAVS *do* evince California's possible violation of the NVRA's recordkeeping requirements. The July 10 letter noted that seven counties failed to provide data regarding duplicate registrations; that there was no data listed in EAVS regarding duplicate registrations that were removed from the statewide voter database; and that California's reported percentage of inactive voters and voters removed because of death was significantly lower than expected. U.S. Br. 21-22. These irregularities were ample basis for the DOJ to assess that it was

appropriate to "investigat[e the] possible violation[]" of California's recordkeeping requirements under the NVRA. *Coleman*, 313 F.2d at 868.

## C. The DOJ's stated purpose of investigating California's possible non-compliance with the NVRA was sufficient.

1. The DOJ also stated a proper purpose for its demand for California's unredacted SVRL: "to assist in our determination of whether California's list maintenance program complies with the NVRA." 2-ER-264. As the United States explained in its opening brief (at 22-25), the district court erred in concluding that, because Title III solely addresses voting-related racial discrimination, DOJ could not utilize the statute to determine whether California was in compliance with the NVRA.[3] Title III's statutory text contains no limitation to voting-rights violations based on racial discrimination, in contrast to other civil rights statutes that expressly limit their remedies on that basis. *Compare* 52 U.S.C. 20701-20706 (Title III of the CRA), *with* 42 U.S.C. 2000e-2 (Title VII of

---

[3] NAACP criticizes (NAACP Br. 35 n.13) the United States for "baldly claim[ing]" that the district court "h[e]ld that the CRA imposes racial discrimination as a precondition for invoking Title III." The district court explained that "[t]he purpose of Title III is to detect voting-related racial discrimination" and then stated that "Title III was not passed as a tool for NVRA compliance." 1-ER-15-16. NAACP has pointed to no other statement from the district court suggesting it would have found any *other* purpose legally acceptable under Section 20703.

- 12 -

the CRA), 52 U.S.C. 10301-10306, 10309 (Voting Rights Act), *and* 42 U.S.C. 3604-3606, 3617 (Fair Housing Act). Accordingly, it is enough for Title III's purpose requirement that the DOJ's demand for California's SVRL "was made for the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the United States has long utilized the CRA to investigate possible violations of federal election laws other than laws addressing voting-related racial discrimination, such as the Uniform and Overseas Citizen Absentee Voting Act (UOCAVA), 52 U.S.C. 20301-20311. In *United States v. Alabama*, No. 2:08-cv-920 (M.D. Ala.), the United States sued Alabama for the State's noncompliance with 42 U.S.C. 1973ff-1(c),[4] which required the State to report to the Election Assistance Commission, not later than 90 days after a regularly scheduled general election for Federal office, certain data regarding ballots from absent uniformed services voters and overseas voters. Add. 1-4. The United States sought data from 21 counties under the CRA on the number of

---

[4] 42 U.S.C. 1973ff-1 was transferred to 52 U.S.C. 20302.

UOCAVA ballots counted, and the parties agreed that the records encapsulating the data were within the scope of the CRA. Add. 5-7.

Defendants contend that the Attorney General can only invoke the statute to carry out certain types of investigations. *See* Cal. Br. 39 ("discrimination based on race and other protected characteristics that prevents eligible voters from" voting); NAACP Br. 30 ("denial of the right to vote and violations of civil rights laws"). Yet they offer no textual basis for these limitations, except for California's reliance (Cal. Br. 42-43) on the "limited subset of records" that Title III covers. *See* 52 U.S.C. 20701. But the fact that the scope of covered records is "limited" says nothing about what purpose is sufficient to request those records. Indeed, it is the specific set of records covered by Title III that naturally limits—not by legal rule, but by practical reality—the purposes for which the Attorney General would invoke her authority under Title III.

As for the legislative history on which defendants rely (Cal. Br. 41; NAACP Br. 31-32), it is both unsurprising and unilluminating that it focuses on racial discrimination in voting. Title III was passed to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General" to thwart "public and private interference with the

- 14 -

right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966); U.S. Br. 3. The legislative history focuses on racial discrimination as a permissible purpose for Title III investigations because that was the primary concern of the day. *See* U.S. Br. 3. But courts "have no warrant to elevate vague invocations of statutory purpose over the words Congress chose." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022). And since the CRA, other election statutes have been passed against the backdrop of Title III, and nothing in Title III suggests that these later statutes cannot provide a proper "purpose" under 52 U.S.C. 20703. U.S. Br. 25-28.[5]

Even if this Court believes that the Attorney General's authority must be limited to investigating the denial or infringement of the right

---

[5] For a similar reason, NAACP errs by relying (NAACP Br. 40) on the statement in *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962), that "failures to purge voters who have moved away or have died . . . b[ore no] particular importance to the present inquiry" under Title III. The "present inquiry" predated the NVRA's list-maintenance requirements, so of course the Attorney General was not seeking to enforce those requirements in that case. The court was explaining why one discrepancy in the data cited in the opinion need not distract the reader trying to understand the relevant allegations of racial discrimination—not foreclosing the possibility that list-maintenance requirements could ever be relevant to a *future* "inquiry." *See id.* at 863 & n.2.

to vote (*see* Cal. Br. 39; NAACP Br. 32), the NVRA is such a statute. In passing the statute, Congress found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). And the Supreme Court has recognized that invalid votes can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

2. Defendants contend that because the NVRA is a later-enacted and narrower statute than Title III, its public-inspection provision (52 U.S.C. 20507(i)) overrides 52 U.S.C. 20703 and establishes the exclusive authority for the Attorney General to seek records for the purpose of investigating NVRA compliance. Cal. Br. 37-39; NAACP Br. 27-30. But the NVRA's *public*-inspection provision says nothing about the Attorney General's inspection authority. It covers a different-in-kind inspection process and cannot be deemed the statute that "specifically address[es] the topic at hand." Cal. Br. 37 (citation omitted in original; citation omitted). That statute—the one regulating the Attorney General's ability

to demand documents related to voting (that are specifically not subject to public disclosure, 52 U.S.C. 20704)—remains 52 U.S.C. 20703.

3. Finally, as the United States argued in its Opening Brief (at 28-31), the district court erred in finding that the DOJ's stated purpose was pretextual.

Defendants mount a two-pronged attack on the Government's position, neither of which has merit. First, they argue that the DOJ failed to explain why the redacted voter information California offered did not satisfy the DOJ's stated purpose of confirming the accuracy of the voter rolls. Cal. Br. 34-36; LWV Br. 36-39. Putting aside that the DOJ is not obligated to go into this level of detail, *see Lynd*, 306 F.2d at 226, the DOJ has explained that it cannot make verified findings and adequately assess a State's recordkeeping under the NVRA without the identifying information required by HAVA. 2-ER-111; *see* 52 U.S.C. 21083(a)(5)(A)(i)-(ii). Second, and relatedly, defendants argue that the DOJ's public representations in other cases as to what it intended to do with the voter information indicate that the DOJ's stated purpose here is pretextual. Cal. Br. 28-32; LWV Br. 39-42. The DOJ has consistently stated that "the only purpose for which the DOJ has requested each

- 17 -

state's SVRL is to assess, on an individualized basis, that State's compliance with the voting laws that the DOJ's Civil Rights Division enforces." U.S. Br. 31 n.8. None of their cited statements, other than outside-the-record hearsay, are to the contrary.[6]

---

[6] Contrary to California's assertion, Executive Order No. 14,399 in no way envisions a "national voting database," nor does it cast doubt on any previous assertions in these cases. Cal. Br. 30 (citation omitted). Executive Order No. 14,399 directs the Department of Homeland Security to create state-specific lists of citizens eligible to receive mail-in ballots, titled the "State Citizenship List." Participation in the program is voluntary and on a state-by-state basis. The United States Postal Service then provides the State with a list of individuals who have voluntarily enrolled with the USPS for the receipt of mail-in or absentee ballots.

The Democratic National Committee as *amicus curiae* mischaracterizes an out-of-context statement in related litigation in which a DOJ attorney explained to the district court how the DOJ would use the SAVE system—run by the Department of Homeland Security—to verify citizenship. *Amicus* incorrectly characterizes this process as an offer "to provide complete, unredacted voter files . . . to DHS." DNC Br. 21. The Civil Rights Division will be accessing the SAVE service in the same manner and form that states and localities have in this administration, *see* U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Apr. 24, 2026) (listing states and localities that have signed agreements with DHS), pursuant to a user agreement which the Civil Rights Division maintains control over the files it uploads into the service.

**D. California's SVRL is a record that "comes into possession" of a State election official under 52 U.S.C. 20701.**

Intervenors argue (NAACP Br. 41-48; LWV Br. 26-30) that the SVRL is not a "record[ or] paper[] which comes into [the] possession" of an "officer of election," 52 U.S.C. 20701, and therefore is not subject to the Attorney General's demand under 52 U.S.C. 20703.

1. Intervenors rely on the word "comes" and insist that "*comes* into possession" must mean something markedly different from "*in* their possession" (or some similar formulation) lest the court read "comes into possession" out of the statute. LWV Br. 29-30; NAACP Br. 43, 50-51. The use of the verb "come[s]" focuses the text of the statute on the moment of acquisition—because it creates a duty based on *how* and *when* an election official first possesses the records and papers. U.S. Br. 34-36. The role of the word "comes" is, in short, quite modest.

a. Intervenors' insistence that "comes" bear significant weight would make more sense if the statute (or a statute *in pari materia*) also used a similar but different phrase (like "are in their possession"), thus suggesting that the use of "comes" must have its own, separate meaning. *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018). But the

- 19 -

statute does not use any other related phrase, 52 U.S.C. 20701, and there is therefore no reason to put such inordinate weight on the word "comes." *See Wisconsin Cent.*, 585 U.S. at 290 (Breyer, J., dissenting) ("[T]here is no canon of interpretation forbidding Congress to use different words in different statutes to mean somewhat the same thing.").[7]

NAACP then looks (NAACP Br. 44, 45 n.15) to language in other statutory provisions that do not refer to "possession" at all. *See* 52 U.S.C. 20507(i)(1) ("all records concerning the implementation of programs and activities"); 5 U.S.C. 552a(a)(5) ("records under the control of any agency"). All these provisions show is that there is no shortage of ways for Congress to create duties regarding items within someone's possession. Indeed, in the NVRA, possession of the relevant records is only implied—not even stated in the text. *See* 52 U.S.C. 20507(i)(1)

---

[7] There is, moreover, nothing unnatural (if perhaps a bit formal) about using "comes into possession" to *include*, among other things, the creation of an item. Even if one would not describe the act of baking a cake as "acquir[ing]" or "com[ing] into possession" of one (NAACP Br. 43), if a person were asked to alert her hungry neighbor in the event she "came into possession" of dessert, she would certainly be expected to give her neighbor a call the moment she pulled a cake out of the oven.

- 20 -

(requiring "maint[enance]" of records without using the word "possess," "control," or anything similar).

b. Even if an "officer of election" does not "come[] into . . . possession" of a document she created herself, the moment another officer of election acquires it, that second officer—by NAACP's own reasoning— has come into possession of the document (because it was not generated by the second officer), has a duty to retain and preserve it, and, upon demand from the Attorney General, must provide it. U.S. Br. 36-37; 52 U.S.C. 20701, 20703. NAACP's textual distinction between "comes into possession" and some version of "in their possession" is therefore entirely academic in the mine-run of cases.

NAACP cites (NAACP Br. 51) this logical consequence as proof that the United States' "proffered interpretation also leads to absurdities" and "makes no sense." But the United States has merely pointed out how *NAACP's reading* of the statute would play out given that Sections 20701 and 20703 focus on individual "officer[s] of election," 52 U.S.C. 20701, and individual "custodians," 52 U.S.C. 20703—not statewide agencies as a

- 21 -

whole. Whatever "absurdities" NAACP complains of are the result of its own argument. NAACP Br. 51.[8]

2. NAACP points (NAACP Br. 45-46) to four other aspects of the CRA that it believes supports its exclusion of self-generated documents.

First, Title III provides a list of documents ("any application, registration, payment of poll tax, or other act requisite to voting in such election") that NAACP insists are "records that election officials *receive*, rather than *create*." NAACP Br. 46 (quoting *Benson*, 2026 WL 362789, at *9). NAACP ignores that these are not the only documents that officers of election must "retain and preserve"; they must "retain and preserve . . . all records and papers which come into [their] possession *relating to*" any of those listed documents. 52 U.S.C. 20701 (emphasis added). That language sweeps far more broadly.

---

[8] NAACP also claims that it would be absurd for the CRA to require retention and preservation of every internal document that "'relat[es] to' a voter's application, registration, or other voting prerequisite in a particular election." NAACP Br. 51 (alteration in original) (quoting 52 U.S.C. 20701). NAACP's only rationale for why this "cannot be right" is to restate its belief that the text excludes internally created documents. *Ibid.*

Second, NAACP finds a "chain of custody" for the "preservation of static documents." NAACP Br. 46. But this "chain of custody" reflects no more than permission to deliver records and papers to "to another officer of election" or, if in accordance with state law, to "deposit[ them] with [a] custodian." 52 U.S.C. 20701. And nothing in the CRA suggests that officers of election can only "retain and preserve," *ibid.*, "static documents" as opposed to continuously updated ones (NAACP Br. 46).

Third and relatedly, NAACP contends (NAACP Br. 47 (alteration in original)) that the CRA's bar on "willful 'alter[ing]'" of any records covered by 52 U.S.C. 20701, *see* 52 U.S.C. 20702, shows that Section 20701 cannot cover an SVRL because HAVA requires constant updates to an SVRL. Section 20702 states in full: "Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall be" punished. 52 U.S.C. 20702. It does not prohibit any activity required or permitted by HAVA.

The surrounding verbs elucidate the meaning of "alter" in this provision. *Fischer v. United States*, 603 U.S. 480, 487 (2024). Those verbs all describe actions typically taken to make a document unavailable,

- 23 -

inaccessible, or inaccurate for evidentiary purposes. *See id.* at 489-490 (describing a similar list of verbs). Performing list maintenance under HAVA is therefore not "alter[ing]" the SVRL at all; the SVRL is, as required by HAVA, an inherently evolving and changing document. List maintenance keeps the SVRL current; it does not "alter" it as that term is used in 52 U.S.C. 20702. Finally, Section 20702's *willful* mens rea erases any doubt that list maintenance under HAVA could run afoul of the CRA's ban on altering records. *See United States v. Solakyan*, 119 F.4th 575, 592 (9th Cir. 2024) (describing willfulness as "kn[o]w[ing]" the defendant's "conduct was unlawful"), *cert. denied*, 146 S. Ct. 91 (2025).

Fourth, NAACP finds (NAACP Br. 46) that retention of documents for only 22 months from the date of a covered election makes little sense "when applied to a statewide voter list stored in a computer database, which compiles voter information across many elections and is intended to be updated and maintained in perpetuity." But the CRA sets a floor, not a ceiling. States are free to retain and preserve any of the covered records and papers for as long as they want, including "in perpetuity." NAACP Br. 46.

- 24 -

## E. Title III preempts California privacy laws.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. U.S. Br. 45-48. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of the Attorney General, to produce registration records pertaining to federal elections, *Lynd*, 306 F.2d at 226, and imposes its own privacy protections for such under Section 20703, *see* 52 U.S.C. 20704. To the extent California privacy law poses a barrier to the Attorney General's demand under Title III for California's unredacted SVRL, the CRA preempts that state law. *See* U.S. Const. Art. VI, Cl. 1.

Defendants contend that there is no conflict between federal and state law because Title III does not require the disclosure of personal and sensitive voter information. Cal. Br. 44-47; NAACP Br. 38-41; LWV Br. 42-48. To this end, defendants insist that the interpretation of Title III's coverage should be guided by the interpretation of the public-inspection provision of the later-enacted NVRA, which allows redactions of personal voter information. Cal. Br. 46-47; NAACP Br. 39-40; LWV Br. 45-46.

This argument overlooks the important distinction that the NVRA's provision allows *public* inspection by *any* party. There is good reason why entities other than the United States should not have access to the personal information of individuals, as they have neither the need for such information nor the mandate or means to protect it from unwarranted disclosure. By contrast, the Attorney General requires personal voter information to investigate possible NVRA violations, *see* pp. 17-18, *supra*, and is *prohibited* by Title III from disclosing records or papers produced under the statute except under limited circumstances, *see* 52 U.S.C. 20704. If Title III only entitled the Attorney General to the same limited information that is fit for public disclosure, there would be little reason to create a CRA-specific privacy provision in Section 20704.[9]

---

[9] Intervenors claim (LWV Br. 44; NAACP Br. 39) that *Lynd*'s reference to "public records which ought ordinarily to be open to legitimate reasonable inspection" as opposed to "confidential, private papers and effects," 306 F.2d at 231, shows that the CRA limits the documents the Attorney General can demand. That is not what *Lynd* said. U.S. Br. 28 n.6. And such a statement would make little sense in light of 52 U.S.C. 20704's confidentiality provision.

**II.   The DOJ's demand for an electronic, unredacted copy of California's SVRL does not violate federal privacy laws.**

In dismissing the DOJ's CRA claim, the district court concluded that the DOJ's request violated the Privacy Act, E-Government Act, and Driver's Privacy Protection Act. 1-ER-28-29. Defendants now argue this Court should affirm on those grounds. Cal. Br. 48-59; NAACP Br. 52-57; LWV Br. 42-48. This Court should reject these arguments.

**A.   The Privacy Act does not warrant dismissal of the DOJ's CRA claim.**

Section 3 of the Privacy Act provides, with certain exceptions, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. 552a(b) (the non-disclosure provision). By its terms, Section 3 only applies to disclosures of personal information by federal agencies and does not apply to state and local entities at all. Accordingly, the non-disclosure provision does not prohibit the Attorney General's demand to California that it turn over an electronic, unredacted copy of its SVRL or California's compliance with that demand. U.S. Br. 37-40.

California argues (Cal. Br. 49) that the maintenance provisions prohibit the DOJ from collecting a voter registration list that includes information such as "an individual's party affiliation," because such information "describ[es] how any individual exercises rights guaranteed by the First Amendment." 5 U.S.C. 552a(e)(7). Because the United States agrees that an individual's party affiliation and how that individual votes (including for which party) "describ[es] how any individual exercises [First Amendment] rights," *ibid.*, the United States will not object to a redaction of that information in the State's SVRL. With the observation that the Privacy Act prohibits maintenance of records "describing *how* any individual exercises [First Amendment] rights," and not *whether* the individual does, *ibid.*, the United States believes that any argument that additional information cannot be provided due to the Privacy Act is an appropriate avenue for inquiry on remand. *Cf.* 1-ER-29 (broadly stating that "voter registration, participation in elections, [and] party affiliation are all types of political expression protected by the First Amendment").

Second, defendants argue that the DOJ failed to comply with the maintenance provision's requirement that it publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or

revis[ing]" a "system of records," 5 U.S.C. 552a(e)(4). Cal. Br. 52-53; NAACP Br. 53-54. As the United States argued in its Opening Brief (at 39-40), however, an electronic, unredacted copy of California's SVRL is covered by the existing SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017).

Defendants respond that this SORN is insufficient. NAACP argues (NAACP Br. 54) that the SORN "does not mention" the NVRA, HAVA, and the CRA. But the SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. And the cited regulation, in turn, makes clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a).[10] The SORN covers a variety of people, including "[s]ubjects of

---

[10] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each

investigations, [and] victims." 68 Fed. Reg. at 47,611. Eligible voters' votes may be diluted by votes cast by non-eligible voters, and they are thus potential victims of NVRA and HAVA non-compliance. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

Lastly, California's contention that the SORN does not give notice that "voter information data is going to be collected on an unprecedented level" (Cal. Br. 54 (citation omitted)), incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. *See* 5 U.S.C. 552a(e)(4) (listing what each "notice shall include").[11]

---

section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited Apr. 23, 2026).

[11] As for NAACP's argument (NAACP Br. 55-56) that the DOJ has not complied with the Privacy Act's requirements for "computer matching," 5 U.S.C. 552a(o)(1), this is a matter appropriate for the district court in tailoring its order of relief. The DOJ is in compliance with these requirements, but the facts necessary to establish compliance are not in the record at this posture.

**B. The E-Government Act and Driver's Privacy Protection Act do not prevent the DOJ from obtaining an electronic, unredacted copy of California's SVRL.**

California argues that the DOJ's demand violated the E-Government Act because the DOJ failed to conduct a privacy impact assessment (PIA) required by the statute before initiating the collection of personal voter information. Cal. Br. 55-57; *see* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922 (44 U.S.C. 3501 note). California's sole argument is that the word "new" "focuses on whether the collection is 'new' to the federal agency . . . rather than on the source from which the agency is acquiring that information." Cal. Br. 56. This argument should be rejected for the reasons set forth in the United States' Opening Brief (at 40-43).

California also argues (Cal. Br. 57-59) that the DOJ's demand violated the Drivers' Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq.* This argument fails because the disclosure is allowed "for use by any government agency . . . in carrying out its functions," such as law enforcement. 18 U.S.C. 2721(b)(1); *see* U.S. Br. 43-45. Defendants' sole response is that DOJ failed to establish that its demand is exempted from the DPPA's coverage because it "never explained 'how the use of millions

- 32 -

of Californian's driver's license numbers' would help it assess the State's compliance with federal election statutes." Cal. Br. 59 (quoting 1-ER-32).

California's argument misses the mark. The absence of identifiers required by HAVA (as in a redacted SVRL) would hamper the DOJ's ability to make findings as to the validity of voter roll registrations and thus perform its role of NVRA compliance. *See* 2-ER-111. As for "*how* driver's license numbers would be *used* in that process" (Cal. Br. 59), the answer is commonsense: additional identifiers, such as driver's license numbers, are used to distinguish duplicate names that are not otherwise easily identifiable—a problem sometimes further muddied by "various spellings" and "clerical errors." *See* The National Comm'n on Fed. Election Reform, *To Assure Pride and Confidence in the Electoral Process* 32-33 (2001) (Ford-Carter Commission) ("figuring which Joseph Smith is the same as that Joe Smith").[12]

---

[12] Available at https://tinyurl.com/yh793ss7.

## CONCLUSION

For the reasons stated in this brief and the United States' Opening Brief, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Weber to immediately produce the requested unredacted SVRL (except as noted at page 28).

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date: April 24, 2026

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-1232

I am the attorney or self-represented party.

**This brief contains** 6,707 **words, including** 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Andrew G. Braniff     **Date** 04/24/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*